J. A39008/06

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| TYSHAUNT LOVE, | : | No. 198 Middle District Appeal 2006 |
| Appellant | : | |

Appeal from the Judgment of Sentence, October 28, 2005,
in the Court of Common Pleas of Dauphin County
Criminal Division at No. CP-22-CR-937-2002

BEFORE: FORD ELLIOTT, P.J., LALLY-GREEN AND JOHNSON, JJ.

MEMORANDUM: FILED: May 8, 2007

Appellant, Tyshaunt Love, appeals the judgment of sentence entered on October 28, 2005, in the Court of Common Pleas of Dauphin County following his conviction for third degree murder.[1] Finding no error, we affirm. Because one of the issues appellant is raising on appeal pertains to an assertion that he was not prosecuted promptly, in violation of Pa.R.Crim.P. 600, 42 Pa.C.S.A., the procedural history will be set out in greater detail.

Appellant's conviction arose from an incident which occurred on December 20, 1996 in Harrisburg. Appellant beat and then shot his girlfriend, Iris Fennell, twice in the head. A criminal information was first

---

[1] *See* 18 Pa.C.S.A. § 2502 (c).

filed against appellant on December 28, 1996, but a **nolle prosequi** was entered on March 6, 1998 at the Commonwealth's request. A new criminal complaint was eventually filed on September 4, 2001, although appellant was not arrested until February 14, 2002.

On April 19, 2002, appellant requested his first continuance, which the court granted by order entered April 23, 2002, until the September 9, 2002 trial term. Also on April 23, 2002, the Commonwealth filed a motion to disqualify the Public Defender from representing appellant, because the Public Defender was also representing Guillermina Cruz, a crucial witness against appellant.[2] The motion to disqualify was denied on August 8, 2002. On August 19, 2002, the Commonwealth filed what purported to be a motion for reconsideration of the court's August 8, 2002, order.[3] The motion for reconsideration was denied by order entered October 31, 2002; and the Commonwealth filed its notice of appeal November 1, 2002.[4]

---

[2] Cruz had been charged criminally because she had initially given false information regarding appellant.

[3] We use the term "purported" because we find that the Commonwealth miscast its motion as one for reconsideration. The focus of the motion was not toward disqualifying the Public Defender based upon its representation of Guillermina Cruz, but rather raised wholly new grounds for disqualifying the Public Defender. The Commonwealth now complained that the Public Defender was also representing LaQuan Williams, a potential alternate suspect in the crime, as well as representing Anthony Knight, a paramour of Guillermina Cruz, who had attempted to help her avoid apprehension by police. In this regard, the motion for reconsideration was actually a wholly new motion to disqualify on different grounds.

[4] This interlocutory appeal was taken pursuant to Pa.R.A.P. 311(d), upon the Commonwealth's certification that the order would substantially handicap the prosecution.

In the meantime, appellant had requested a second continuance, which was granted by order entered October 3, 2002, until the December 9, 2002 trial term. However, trial was not held in December, because of the pending Commonwealth appeal. On December 8, 2003, appellant filed a motion to dismiss charges pursuant to Rule 600, which was denied on January 2, 2004. This court quashed the Commonwealth appeal on January 12, 2004, based upon a November 24, 2003 decision of the supreme court of Pennsylvania.[5] The Commonwealth filed a petition for allowance of appeal on February 11, 2004.

On February 12, 2004, appellant and the Commonwealth entered a written agreement under which the Commonwealth would withdraw its petition for allowance of appeal and the trial court would certify a **nunc pro tunc** appeal to this court, pursuant to Pa.R.A.P. 313 and 1311, 42 Pa.C.S.A., of the Commonwealth's motions to disqualify the Public Defender. On appellant's part, the trial court would also certify an appeal **nunc pro tunc** of the denial of appellant's Rule 600 motion. The parties also agreed that bail would be granted appellant, and bail was granted by order entered February 12, 2004. By order entered April 6,

---

[5] In **Commonwealth v. Cosnek**, 585 Pa. 411, 836 A.2d 871 (2003), our supreme court limited interlocutory appeals under Rule 311(d) to those circumstances in which the pre-trial ruling results in the suppression, preclusion, or exclusion of evidence.

2004, the trial court granted the Commonwealth leave to appeal; and the Commonwealth filed its notice of appeal on April 14, 2004.[6]

On November 24, 2004, this court quashed the Commonwealth's second appeal; and on February 9, 2005, the case was remanded to the trial court. On March 9, 2005, appellant moved for a third continuance, which was granted by order entered March 11, 2005, until the June 20, 2005 trial term. On June 20, 2005, appellant moved for a fourth continuance, which was granted that same day until the August 1, 2005 trial term. A fifth defense continuance was granted on July 12, 2005, until the September 12, 2005 trial term. On September 6, 2005, appellant filed a motion to dismiss charges pursuant to Rule 600. This motion was denied in open court immediately preceding trial. (Notes of testimony, 9/12/05 at 16.)

Trial commenced on September 12, 2005. On September 20, 2005, the jury convicted appellant of third degree murder. Sentence was imposed on October 28, 2005, with appellant receiving a term of 15 to 30 years' imprisonment. A post-sentence motion to modify sentence was denied, and appellant timely filed this appeal thereafter.

Appellant's first issue on appeal asserts that the trial court erred in denying his motion to dismiss pursuant to Rule 600. We begin by noting that in evaluating Rule 600 issues, our standard of review of a trial court's

---

[6] On June 6, 2004, the trial court granted appellant leave to appeal the denial of his Rule 600 motion. Appellant never filed this appeal.

decision is whether the trial court abused its discretion. **Commonwealth v. Frye**, 909 A.2d 853 (Pa.Super. 2006).

Pursuant to Rule 600, a defendant on bail must be brought to trial within 365 days from the date on which the criminal complaint is filed. Pa.R.Crim.P. 600(A)(3), 42 Pa.C.S.A. However, certain time is excludable from this limit including the time between the filing of the complaint and the arrest, as well as any time granted pursuant to a continuance requested by the defense. Pa.R.Crim.P. 600(C)(1) and (C)(3)(b), respectively. Moreover, our supreme court has recognized that the Rule 600 period for commencement of trial may be extended where, in good faith, the Commonwealth takes an interlocutory appeal of a pre-trial order in the belief that the prosecution would be substantially handicapped thereby. **Commonwealth v. Matis**, 551 Pa. 220, 710 A.2d 12 (1998). Given these parameters, we find that trial was commenced within the Rule 600 requirements.

The primary dispute on appeal centers on whether the time for commencement of trial should be extended under Rule 600 for the periods of time that this case spent on appeal before this court. We hold that it should. As to the first appeal, we find that the Commonwealth was pursuing its appeal in the good faith belief that its prosecution of appellant would be handicapped. In its brief in support of the motion to disqualify, the Commonwealth voiced serious concerns that a conflict of interest between

was untimely. However, as the appeal was dismissed by the panel on the basis of **Cosnek**, which determined that an appeal from either the August 8, 2002 or October 31, 2002 orders would have been interlocutory, the panel's discussion in footnote 5 is **dicta**.

Moreover, as we have previously noted, we do not agree with the Commonwealth's characterization of its August 19, 2002 motion as one for reconsideration. Rather, we view the motion for reconsideration as an entirely new motion to disqualify the Public Defender because the motion stated wholly new grounds for doing so. Therefore, the ensuing appeal was timely filed from the denial of this new motion. We find that the Commonwealth was acting in good faith in pursuing this appeal.

As for the second appeal, we find that appellant consented to this appeal by the agreement entered into on February 12, 2004. Thereunder, appellant agreed that the trial court would grant the Commonwealth the right to file an appeal **nunc pro tunc**, and in return the Commonwealth would withdraw its petition for allowance of appeal to the supreme court, and the trial court would also grant appellant a right to file an appeal **nunc pro tunc** from a previously denied Rule 600 motion to dismiss.

Appellant contends that he did not agree to waive the running of Rule 600 pursuant to the February 12, 2004 understanding. However, while we concur that there was no specific term in the agreement calling for such waiver, we find that waiver was implicit in the understanding. Obviously, if

the Public Defender's representation of appellant and its prior representation of critical Commonwealth witness Guillermina Cruz would provide grounds for appellant to raise issues of ineffective assistance of counsel on appeal subsequent to any conviction. (**See** Record Document No. 21.) We find that the Commonwealth could pursue an interlocutory appeal of the denial of its motion to disqualify in good faith based upon this concern. The Commonwealth could not anticipate that our supreme court would subsequently limit such interlocutory appeals to pre-trial orders that suppressed, precluded, or excluded evidence.

Appellant also contends, by reference to a footnote (footnote 5) appearing in the memorandum decision of this court which quashed the first appeal, that the Commonwealth exercised bad faith in pursuing the first appeal because the Commonwealth did not timely appeal the order of August 8, 2002, which denied the original motion to disqualify the Public Defender, but rather the Commonwealth untimely appealed the October 31, 2002 order which denied its motion for reconsideration. Obviously, we could not find that the Commonwealth had pursued an appeal in good faith were that appeal untimely.

The footnote correctly stated that a motion for reconsideration that is denied does not toll the time for taking an appeal. ***Commonwealth v. Moir***, 766 A.2d 1253 (Pa.Super. 2000). The panel noted that since the notice of appeal was filed beyond 30 days from August 8, 2002, the appeal

the parties anticipated that Rule 600 was not waived, the Commonwealth's appeal would be self-defeating as the ensuing appeal would likely consume the time remaining under Rule 600. Moreover, appellant clearly anticipated that a delay would be wrought by his own negotiated appeal and he certainly expected waiving the running of Rule 600 for that appeal. That appellant subsequently chose not to pursue that appeal does not nullify the implied waiver.

Having found that the periods of time which elapsed while this case was on interlocutory appeal to this court properly extend the 365-day period of Rule 600 (appellant was free on bail), we turn to our calculation of time actually considered as expended under Rule 600. The following chart best illustrates our assessment of elapsed time and displays which periods are excluded from the Rule 600 calculation, which periods are not, and which periods cause the Rule 600 limit to be extended:

| Start | End | Days | Cause | Treatment |
|-------|-----|------|-------|-----------|
| 9/4/01 | 2/14/02 | 163 | Pre-Arrest | Excluded |
| 2/15/02 | 4/23/02 | 77 | Case time running | Not Excluded |
| 4/24/02 | 9/9/02 | 158 | Defense Continuance | Excluded |
| 9/10/02 | 10/3/02 | 23 | Case time running | Not Excluded |
| 10/4/02 | 12/9/02 | 66 | Defense Continuance | Excluded |
| 12/9/02 | 2/12/04 | 430 | First Appeal | Extended |
| 2/12/04 | 2/9/05 | 363 | Second Appeal | Excluded by consent |
| 2/10/05 | 3/11/05 | 29 | Case time running | Not Excluded |
| 3/12/05 | 9/12/05 | 184 | Defense Continuances | Excluded |

As can be seen, only three periods of 77, 23, and 29 days, respectively, can be regarded as not excluded. The sum of these amounts,

129 days, is well below the 365-day limit provided by Rule 600. Appellant also argues on appeal that the time period for his second continuance, from October 4, 2002 to December 9, 2002, should not be charged against him because the continuance was occasioned by the Commonwealth's failure to promptly provide discovery. However, even if we also found this time period to be not excluded, the additional 66 days only results in a total of 195 days, again, well below the 365-day limit. We find no violation of Rule 600.

Appellant's next argument on appeal contends that the trial court erred in permitting the March 2, 2002 preliminary hearing testimony of witness Guillermina Cruz to be read into the record at his trial because she was unavailable for trial. Appellant cites **Crawford v. Washington**, 541 U.S. 36 (2004), for the proposition that, under the Sixth Amendment's Confrontation Clause, in order to substitute the prior testimony of a currently unavailable witness, a defendant must have had an adequate opportunity to cross-examine the witness at that prior hearing. Appellant complains that at the preliminary hearing, several pieces of vital impeachment evidence were unavailable to counsel for the cross-examination of Cruz. Specifically, appellant protests that two statements by Cruz to police, dated March 24, 2001 and February 19, 2002, as well as her grand jury testimony of March 28, 2001, were unavailable to use in cross-examination at the March 5, 2002 preliminary hearing.

The admission of evidence is within the sound discretion of the trial court and will not be reversed unless the trial court clearly abused that discretion. **Commonwealth v. Levanduski**, 907 A.2d 3 (Pa.Super. 2006), **appeal denied**, 2007 WL 527701 (Pa. February 21, 2007). Furthermore, "it is well established that an unavailable witness' prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine that witness at the prior proceeding." **Commonwealth v. Bazemore**, 531 Pa. 582, 585, 614 A.2d 684, 685 (1992). Moreover, a full opportunity to cross-examine includes access to any vital impeachment evidence. **Bazemore**. Appellant concedes that the Commonwealth made a good faith effort to locate Cruz and that she was unavailable for trial. (Appellant's brief at 58.) The only remaining issue then is whether the unavailability of three prior statements by Cruz made it impossible to adequately impeach her at trial.

We have examined the three prior statements by Cruz and find them all to be relatively consistent with each other and with the March 5, 2002 preliminary hearing testimony. Generally, in all three accounts Cruz met appellant near a Chinese restaurant the night before the murder. After going to Cruz's grandmother's house, the two then went to appellant's uncle's residence on Balm Street where Cruz watched television and fell asleep on a couch. The next morning, appellant and Cruz went to the

victim's residence. The victim was cooking something on the stove and accosted Cruz as she entered the kitchen as to why she was with appellant. An argument then erupted between appellant and the victim. Appellant went over to the stove and took a gun out of a drawer beneath the stove. He then grabbed the victim by the hair, began beating her, and dragged her upstairs as the argument continued. Cruz then heard a gunshot and something heavy hit the floor above her. Cruz stated that after the first shot, she went upstairs in time to see appellant administer a second shot.

The only area where the statements differ is whether another individual, LaQuan Williams (a/k/a "Kazar"), who was staying at the victim's residence, was present at the time of the shooting. According to the March 5, 2002 preliminary hearing account, Cruz stated that she saw Kazar exit the bedroom in which appellant had taken the victim immediately before appellant fired the weapon the second time. (Notes of testimony, 9/20/05 (volume III) at 170.) In the March 24, 2001 statement, Cruz merely allowed that someone else could have been present upstairs. During her March 28, 2001 testimony before the grand jury, Cruz testified that she did not know whether anyone else was in the house at the time of the shooting and specifically stated that she didn't know where Kazar was. (Notes of testimony, 3/28/01 at 34.) In the February 19, 2002 statement, Cruz again stated that she thought Kazar was in the room where appellant had taken the victim. (Voluntary Statement Addendum, 2/19/02 at 3.)

We note that in the February 19, 2002 statement, the police asked Cruz why she had not mentioned Kazar in her previous statements, and Cruz replied that she was "scared of him." (***Id.***) Other witnesses presented at appellant's trial indicated that the victim was also afraid of Kazar. (Notes of testimony, 9/15/05 (volume II) at 305-306, 351-352.) One of these witnesses testified that Kazar had strangled her (the witness). (***Id.*** at 308.)

We find the differences in Cruz's statements to be insignificant and that they could not form the basis of any meaningful impeachment. The fact that she had previously neglected to mention Kazar's presence could easily have been explained by her fear of him. Moreover, it was a defense theory at trial that Kazar may have been the actual perpetrator. (Notes of testimony, 9/20/05 (volume III) at 273-274.) It seems unlikely that the defense would want to impeach Cruz's March 5, 2002 preliminary hearing testimony that placed Kazar at the crime scene at the time of the shooting with her March 28, 2001 testimony that removed Kazar from the picture.

Moreover, the defense had better sources available to impeach Cruz. Foremost was her testimony at a preliminary hearing held during the original, aborted prosecution of appellant. At that time, Cruz testified that after she fell asleep watching a movie at appellant's uncle's house and awoke the next day, appellant and Cruz went to her grandmother's house, where appellant took his leave of her and where she stayed all day, not seeing appellant again. (Notes of testimony, 1/17/97 at 15, 22.) We also

note that at the March 5, 2002 preliminary hearing, the defense made use of a December 28, 1996 statement of Cruz to police. (Notes of testimony, 3/5/02 at 32.) In this statement, Cruz stated that after appellant and the victim went upstairs, she heard two gunshots and that afterward appellant came running downstairs with a gun. (Voluntary Statement, 12/28/96 at 5). Significantly, in this version Cruz never saw appellant fire the weapon.

In sum, we find that the Cruz statements that were not available to cross-examine her at the preliminary hearing were of questionable impeachment value and that better sources of impeachment were available. We see no abuse of discretion in permitting the introduction of Cruz's March 5, 2002 preliminary hearing testimony.

Before concluding our review of this issue, we note additional related complaints by appellant. Appellant objects that he did not have access to phone calls Cruz had with police prior to the preliminary hearing in which she stated that an Anthony Knight had threatened her not to testify. Appellant does not indicate how this information could have been used to impeach Cruz, and we cannot speculate as to its potential use.

Appellant also bemoans the lack of access to the statements of "numerous other witnesses" and "several items of evidence" with which appellant could have impeached Cruz. However, appellant identifies none of these witnesses, nor their statements, nor does he describe these additional items of evidence. We cannot review phantom evidence.

Appellant argues that at the preliminary hearing he could not cross-examine Cruz about anything that happened to her after she left the victim's residence on the day of the shooting. Appellant claims that this is significant because after the March 5, 2002 preliminary hearing, appellant's counsel learned that Cruz was claiming that she met with appellant later that day and that appellant told her to make up this story. We are not sure exactly what appellant is claiming with this argument, but we can hardly believe that appellant told Cruz to make up a story in which Cruz witnesses appellant beating and shooting the victim. We see no merit here.

Finally, appellant claims that he was unable to impeach Cruz with any of her juvenile adjudications. Appellant, however, has not identified those adjudications, nor whether they were **crimen falsi** in nature. Thus, we cannot determine whether such impeachment was possible.

In his next issue on appeal, appellant argues that the trial court improperly excluded evidence regarding a prior bad act of LaQuan Williams. As noted earlier, it was appellant's theory that Williams was the actual perpetrator of the murder. Appellant wanted to present testimony from a prior criminal trial which showed that exactly one year earlier, Williams had committed a rape and attempted murder under similar circumstances. The testimony was that of the victim, Vanessa Ames, who was currently unavailable. Appellant wanted to present the evidence under the common plan exception to the hearsay rule. We note the applicable case law:

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

***Commonwealth v. Smith***, 635 A.2d 1086, 1089 (Pa.Super. 1993), quoting ***Commonwealth v. Frank***, 577 A.2d 609, 614 (Pa.Super. 1990). Recent case law has reiterated these principles. ***Commonwealth v. Judd***, 897 A.2d 1224 (Pa.Super. 2006), ***appeal denied***, ___ Pa. ___, 912 A.2d 1291 (2006). We find no abuse of discretion instantly.

In opposition to appellant, the Commonwealth presented the testimony of George Cronin who was employed by the Pennsylvania State

J. A39008/06

Police in the criminal investigation assessment office. Cronin's job was to assess sex and murder crime scenes to determine whether there is a signature aspect or **modus operandi**. Cronin reviewed the police investigative files with regard to both the murder of Iris Fennell and the rape of Vanessa Ames, and came to the conclusion that there was no signature quality that would lead him to believe that the two crimes were committed by the same person. (Notes of testimony, 9/12/05 (volume I) at 76.) In fact, Cronin actually stated, "I'm quite comfortable saying Williams did not kill Iris Fennell . . ." (**Id.** at 75.)

We have examined the evidence of the rape of Vanessa Ames, and we agree with the conclusions of both Cronin and the trial court that there was no evidence of common scheme or plan between the two crimes. Ames was not severely beaten like Fennell was. Williams used violence only sufficient to control Ames so that she could be raped. As Cronin pointed out, the Ames' crime did not show the emotional investment betrayed by the perpetrator of the Fennell crime. (**Id.**) Ames was also bound by duct tape to a bed, prior to being raped. Fennell was not bound. The central motive of the Ames crime was rape, and the botched murder attempt that followed was to prevent Williams' identification. The central motive of the Fennell crime was murder, which was followed by a meager attempt to stage the body as though the victim had also suffered a sexual assault.[7]

---

[7] Fennell's body was found naked from the waist down with her legs spread.

Obviously, in any murder and attempted murder there are going to be similarities. Williams attempted to shoot Ames in the head, and Fennell was shot in the head. There was also evidence that the perpetrator of each crime attempted to clean the crime scene. Nonetheless, we see nothing that indicates a common plan or scheme to these two crimes, and we certainly can find no abuse of discretion in the trial court's ruling that no evidence of the Ames' rape could be admitted. There is no error here.

In his final claim on appeal, appellant challenges the discretionary aspects of his sentence. Our review is again based upon an abuse of discretion standard. **Commonwealth v. Marts**, 889 A.2d 608 (Pa.Super. 2005). However, review of such an issue is not automatic:

> When making this challenge, an appellant must include in his or her brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. **Commonwealth v. Mouzon**, 571 Pa. 419, 812 A.2d 617 (2002); **Commonwealth v. Tuladziecki,** 513 Pa. 508, 522 A.2d 17 (1987); 42 Pa.C.S.A. § 9781(b); Pa.R.A.P. 2119(f). Where an appellant fails to comply with Pa.R.A.P. 2119(f) and the Commonwealth objects, the issue is waived for purposes of review. **Commonwealth v. Farmer**, 758 A.2d 173, 182 (Pa.Super.2000), **appeal denied**, 565 Pa. 637, 771 A.2d 1279 (2001).

**Commonwealth v. Montgomery**, 861 A.2d 304, 308 (Pa.Super. 2004).

Instantly, appellant has not included the requisite concise statement in his brief, and the Commonwealth has objected. Therefore, this issue is waived.

J. A39008/06

Accordingly, having found no merit in any of appellant's issues on appeal, we will affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered:

*James D. McCullough*
Deputy Prothonotary

Date: May 8, 2007