COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
v. :
: No.: CP-22-CR-0937-2002
TYSHAUNT LOVE :
:
: CHARGE: MURDER OF THE THIRD DEGREE

## ORDER

AND NOW, this _____ day of January 2010, upon consideration of the Defendant's filing entitled "Amended PCRA Petition," it is hereby ORDERED AND DECREED that Petitioner's request for an evidentiary hearing pursuant to Pa. R. Crim. P. 908(A)(2) is GRANTED. Said hearing shall be scheduled before this honorable court on the ____ day of _____, 2010 at ____ o'clock in the ___m.

IT IS FURTHER ORDERED AND DECREED that Petitioner's request for a Writ of Habeas Corpus Ad Testificandum is GRANTED directing the Sheriff of the County of Dauphin to collect the person of Tyshaunt Love, Inmate I.D. # GK8460, currently lodged at SCI – Huntingdon with a facility address of 1100 Pike Street, Huntingdon, Pennsylvania, 16654-1112 and transport Tyshaunt Love to the custody of the Warden of the Dauphin County Prison.

IT IS FURTHER ORDERED AND DECREED that, the Warden of Dauphin County Prison shall produce Tyshaunt Love to the Sheriff of Dauphin County to be transported to the Dauphin County Court of Common Pleas

for the purposes of testifying in Court on _____ and every day thereafter until the conclusion of his PCRA Evidentiary Hearing.

    IT IS FURTHER ORDERED AND DECREED that the Sheriff of Dauphin County, Pennsylvania, is directed to serve the subpoena to testify in this matter upon Tyshaunt Love as well as serve this writ upon the Warden of SCI – Huntingdon as well as the Warden of Dauphin County Prison for the purpose of Tyshaunt Love's release from the said institutions. Tyshaunt Love is to be lodged in Dauphin County Prison until disposition of the above-captioned matter. Upon the conclusion of the PCRA Evidentiary Hearing, the Sheriff of Dauphin County shall return Tyshaunt Love to the custody of SCI – Huntingdon.

    IT IS FURTHER ORDERED AND DECREED that the Dauphin Court Clerk of Courts shall execute the Writ of Habeas Corpus issued to the Warden of SCI – Huntingdon and the Warden of Dauphin County Prison as well as execute the subpoena issued to Tyshaunt Love.

    This Order is sufficient to warrant the performance of the acts herein designated. All other steps necessary in achieving this transfer shall be completed without further order of Court.

BY THE COURT:

_____
BRUCE F. BRATTON, JUDGE

Distribution:
Clerk of Courts
Sean M. McCormack, Esquire, District Attorney's Office
Justin J. McShane, Esq., 4807 Jonestown Road, Suite 148, Harrisburg, PA 17109

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE COURT OF COMMON PLEAS |
| | : | DAUPHIN COUNTY, PENNSYLVANIA |
| V. | : | NO: CP-22-CR-0937-2002 |
| TYSHAUNT LOVE | : | CHARGE: MURDER OF THE THIRD DEGREE |

TO THE HONORABLE BRUCE F. BRATTON, JUDGE OF SAID COURT:

**AND NOW,** this 29th day of December, 2009, comes the above named Petitioner, TYSHAUNT LOVE, by and through his attorneys, The McShane Firm, LLC, and Justin J. McShane, Esquire, and respectfully files the following Amended PCRA Petition and respectfully avers in support of as follows:

1. The above-named Petitioner is currently confined at the Pennsylvania State Correctional Institution – Huntingdon, located at 1100 Pike St., Huntingdon, PA 16654-1112. He is inmate number GK-8460.

2. In Docket Number CP-22-CR-0937-2002, by way of criminal complaint filed by an Officer of the Harrisburg Police Department on February 14, 2002, the above-named Petitioner was charged with Murder of the Third Degree, alleged to have occurred on or about December 20, 1996.

3. The above-named Petitioner was found guilty of third degree murder September 20, 2005 at the conclusion of a Jury Trial.

4. Sentencing by this Honorable Court was on October 28, 2005, at which time the Petitioner was sentenced to a minimum of fifteen (15) years and a maximum sentence of thirty (30) years in a State Correctional Institution.

5. A timely Post-Sentencing Motion was filed with the Clerk of Courts on November 7, 2005.

6. On December 28, 2005, this Honorable Court denied the Petitioner's Post-Sentencing Motion.

7. The Petitioner filed a Notice of Appeal to the Superior Court on January 27, 2006.

8. The Superior Court affirmed the trial court's decision on May 8, 2007.

9. Thereafter, on January 16, 2009 the Pennsylvania Supreme Court denied the Petitioner's Petition for Allowance of Appeal.

10. The Petitioner filed a *pro se* PCRA Petition on February 24, 2009.

11. The undersigned was appointed counsel by this Honorable Court on March 30, 2009.

12. The undersigned filed a Petition for Transcription of Notes of Testimony on September 8, 2009 requesting the Notes of Testimony for the following dates and proceedings in reference to the above-captioned matter:

    a. July 30, 2002 – Hearing on Commonwealth's Motion to Disqualify Public Defender's Office
    b. October 29, 2002 – Omnibus Pretrial Hearing
    c. February 18, 2005 – Hearing scheduling Jury Trial
    d. March 14, 2005 – Hearing scheduling Jury Trial
    e. June 20, 2005 – Hearing scheduling Jury Trial
    f. July 12, 2005 – Hearing scheduling Jury Trial
    g. September 20, 2005 (and all other dates where testimony was heard) – Jury Trial
    h. September 23, 2005 – Hearing scheduling Sentencing
    i. October 28, 2005 – Sentencing

13. The undersigned received the aforementioned items on September 25, 2009.

14. The undersigned filed a series of Motions to Extend the Timely Filing of the Petitioner's Supplemental PCRA Petition, which was granted by way of Court Order on November 20, 2009 and stated that the Petitioner's Amended PCRA is due on December 31, 2009.

## ALLEGATIONS AND ISSUES COGNIZABLE
## UNDER THE POST CONVICTION RELIEF ACT

### Standard To Be Applied

15. Averments one (1) through fourteen (14) are incorporated herein by reference as if they had been stated in their respective entireties.

16. Petitioner is aware that it is his burden of production and persuasion even at the time of pleadings.

17. The appropriate statute and developed case law makes clear that the Petitioner must plead with particularity and ultimately prove by a preponderance of the evidence eligibility for relief under the PCRA. 42 Pa.C.S.A. §9543(a).

18. The Petitioner is also aware that counsel is presumed to be effective and therefore, the Petitioner has the burden of establishing ineffective assistance of counsel. *Commonwealth v. Breakiron*, 729 A.2d 1088 (Pa. 1999); *Commonwealth v. Howard*, 749 A.2d 941 (Pa. Super. 2000).

19. The Petitioner is aware that there is a three (3) prong evaluation as to all ineffectiveness claims. Prongs one (1) and two (2) of the standard concern prior counsel's performance. The petitioner must establish that the issue underlying the claim of ineffectiveness has arguable merit and that defense counsel's act or omission was not reasonably designed to advance the interests of the petitioner. The third prong, prejudice, is met if the petitioner knows that there is a reasonable probability that, but-for his counsel's unprofessional errors, the result of the proceeding would have been different. *Commonwealth v. Pierce*, 527 A.2d 973, 515 Pa. 153 (Pa. 1987).

20. An ineffectiveness claim is to be evaluated according to standards in effect at the time of counsel's representation. *Commonwealth v. Pizzo*, 602 A.2d 823, 825 (Pa. 1992); *Commonwealth v. Robinson*, 682 A.2d 831, 835 (Pa. Super. 1996).

## Arguable Claims

21. Averments one (1) through twenty (20) are incorporated herein as if they had been stated in their respective entireties.

22. A claim may have arguable merit when the attorney has failed to "explore all alternatives available to assure that the jury heard the testimony of a known witness who might be capable of casting a shadow upon the Commonwealth's witness's truthfulness." *Commonwealth v. Twiggs*, 331 A.2d 440, 443 (Pa. Super. 1975).

23. The duty to investigate is required of all attorneys and "of course, may include a duty to interview certain potential witnesses." *Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009). Further, "a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance." *Johnson*, 966 A.2d at 536.

24. Moreover, it is imperative that a defense attorney "interview not only his own witnesses but also those that the government intends to call, when they are accessible." *Commonwealth v. Bailey*, 480 Pa. 329, 335, 390 A.2d 166, 170 (Pa. 1978)(citing *United States. v. DeCoster*, 487 F.2d 1197, 1203-04 (D.C. Cir. 1973)).

25. A claim may also have arguable merit if counsel ignores available and admissible evidence tending to establish a viable defense. *Commonwealth v. Perry*, 644 A.2d 705 (Pa. 1994); *Commonwealth v. Legg*, 551 Pa. 437, 447 711 A.2d 430, 434 (Pa. 1998).

26. Counsel must first investigate all witnesses, even if the attorney believes that a particular avenue in question will offer little chance of leading to a successful defense, as it is an attorney's duty to explore the testimony of any witness whose testimony might cast doubt on the testimony of the Commonwealth's witnesses." *McCaskill*, 468 A.2d 472, 477-78 (Pa. Super. 1983)(citations omitted).

27. The prosecution's file is not a substitute for an independent investigation by defense counsel. *Commonwealth v. Mabie*, 359 A.2d 369, 374 (Pa. 1976).

28. While an attorney may allege he or she had reasonable strategy for not calling a certain witness, that strategy can only be formed after the witness is questioned. *Mabie*, 359 A.2d at 374. Specifically, even where the witness appears to be hostile, the attorney still has a duty to investigate and question that individual as there is no danger of that individual "inflaming a jury during an interview." *Id.* This duty to investigate applies even in situations where the attorney is unsure of the witness's credibility. *Id.* As such, before an attorney can claim reasonable strategy for not involving that individual in the defendant's case, that attorney must minimally interview or question the witness before reaching that decision. *Id.* Where the attorney fails to do so, the attorney is prevented from using that claim to defend his or her decision. *Id.*

29. An attorney may not assert that there was a "reasonable basis designed to effectuate the [defendant's] interest" when counsel has failed to "question these witnesses or at least make a reasonable attempt to do so." *Id.*

### Prejudice Prong

30. Averments one (1) through twenty-nine (29) are incorporated herein by reference as if they had been stated in their respective entireties.

31. In order to succeed on a PCRA claim, a petitioner must also demonstrate that he suffered prejudice as a result of trial counsel's ineffectiveness. *Pierce*, 527 A.2d at 975, 515 Pa. at 159 (citations omitted).

32. Prejudice is established where a petitioner demonstrates that "but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Kimball*, 683 A.2d 666 (Pa.Super. 1996), rev'd, 724 A.2d 326, 333 (Pa. 1999).

33. An ineffectiveness claim requires a defendant to demonstrate that counsel's act or omission had an "adverse effect on the outcome of the proceedings." *Commonwealth v. Marshall*, 633 A.2d

1100, 1109 (Pa. 1993). See also *Commonwealth v. Lark*, 698 A.2d 43, 47 (Pa. 1997); *Commonwealth v. Chambers*, 807 A.2d 872, 883 (Pa. 2002); *Commonwealth v. Dugan*, 855 A.2d 103 (Pa.Super. 2004).

34. The defendant must establish that because of counsel's conduct, a "reliable determination of guilt was not made at trial." *Commonwealth v. Lassen*, 659 A.2d 999, 1011 (Pa.Super. 1995).

35. To meet the *Pierce* standard, the Petitioner must show that the proceeding resulted in his or her conviction was so unfair that a miscarriage of justice occurred that no civilized society can tolerate or that he or she is innocent of the crime charged. *Commonwealth v. Szuchon*, 633 A.2d 1098, 1100 (Pa. 1993).

36. The Petitioner so alleges.

### Specific Allegations and Basis for Relief

37. Averments one (1) through thirty-six (36) are incorporated herein by reference as if they had been stated in their respective entireties.

38. In the case *sub judice*, several individuals were questioned by the police on numerous occasions to provide information in regards to the death of Ms. Iris Fennel.

39. The Public Defender's office, through discovery, was made aware of such individuals and was provided a number of such statements. In these statements, a number of remarks by these individuals were made in reference to another individual and, if these individuals were called as hostile witnesses, would have had much potential to cast reasonable doubt upon the Commonwealth's case.

40. The Petitioner alleges that a number of individuals who provided statements should have not only been questioned separately by the Public Defender's Office but should have also been called as witnesses during the Petitioner's case-in-chief. These individuals would likely have been able to attack the credibility of the Commonwealth's witnesses as well as demonstrate that it was another individual, not the Petitioner, who murdered Ms. Iris Fennel.

41. The Petitioner alleges that the Public Defender's office failed to interview these individuals and rather, merely relied on the statements provided to them by the police in determining it was not within the Petitioner's best interest to call these individuals as a witness.

42. The Petitioner alleges that the following witnesses should have been both interviewed and possibly called as witnesses by the defense and avers that these individuals would have testified as follows:

    a. <u>LaQuan Williams (aka "Kazar")</u> – Kazar was the alternate murder suspect in the Petitioner's case. As such, several statements, as demonstrated *infra*, were made by various individuals which demonstrated that Kazar was involved in the murder of Iris Fennel. Moreover, Mr. Williams was located the next day and police recovered Iris's blood on Kazar's boot.

    b. <u>Ms. Kendra Smith</u> – Ms. Smith provided the police a statement informing them that Kazar had borrowed a gun which belonged to Cory Alston (aka "Miami") and the gun was returned to Mr. Alston with blood on it. Moreover, Ms. Smith stated that she did not know if Kazar asked to borrow the gun before or after Ms. Smith had found out Iris had been killed.

    c. <u>Keith Herndon</u> – Mr. Herndon stated that Kazar admitted to Mr. Herdon that he (Kazar) should have killed his girlfriend like he had killed Iris when Mr. Herndon and Kazar were both located in a State Correctional Institution in 1998.

    d. <u>Larry Leon Fennel</u> - Mr. Fennel saw Kazar after Kazar had attacked and raped an individual prior to the Iris's murder. At this time, Kazar told Mr. Fennel that he knew that Iris had informed authorities of Kazar's location when he was on the run from authorities and, as a result, Kazar had threatened to kill Ms. Fennel.

    e. <u>Anthony Knight (aka "Black"; "Maurice Apkin")</u> – Mr. Knight was informed by an individual named Guillermina Cruz[1] that she had killed Ms. Fennel. Mr. Knight attempted to hide Ms. Cruz so that she could avoid talking to the police in the time period following Iris's murder.

---

[1] Ms. Cruz was declared unavailable at the time of the trial. Inasmuch as the Petitioner's prior counsel should have additionally called Ms. Cruz as a witness and taken appropriate steps in this fashion, Petitioner nevertheless acknowledges that this determination of unavailability was made by this Honorable Court at trial as well as the fact that this issue was subsequently argued before the Pennsylvania Superior Court and, therefore, for purposes of the Petitioner's Amended PCRA claim, is waived as it was previously litigated.

Additionally, Black was an alternate suspect in the case and, as such, should have been interviewed and called as a witness.

f. <u>Daelene Saez</u> – According to Ms. Saez, she and Iris were best friends. Additionally, Ms. Saez informed the police that Iris was extremely afraid of Kazar. Specifically, she informed police that Iris was uncomfortable and concerned that something would happen while Mr. Williams was staying in her home while he was on the run. She further stated that she had visited the Petitioner in prison, at which time the Petitioner had indicated that he did not kill Iris and that someone else had done it.

g. <u>Carlos Hill</u> – Mr. Hill was Kazar's cellmate at one time. He stated that when Kazar was brought into booking the day following Iris's murder, Kazar was upset because police took his clothes for blood samples. Kazar stated to Mr. Hill that he hoped that his blood samples from his clothing after the arrest did not come back.

h. <u>Linda Giamquitto</u> – Ms. Giamquitto stated that Ms. Cruz was talking about fighting the victim the night of the murder. Additionally, Ms. Cruz had stated that Iris was alive after her and the Petitioner had left her house.

i. <u>Floyd Banks</u> – Mr. Banks overheard the Petitioner and Mr. Carlos Hill discussing the Petitioner's case, at which time the Petitioner proclaimed his innocence and stated that he went to Iris's house alone and was alone when he found her. This corroborates the Petitioner's version of events.

j. <u>"Pop-Pop"</u> – The Petitioner alleged that he spent the night prior to Iris's murder at an individual named Pop-Pop's house. Moreover, in one of Ms. Cruz's voluntary statements, she alleged that the Petitioner made a phone call using the phone at this residence. The Petitioner, however, did not believe that "Pop Pop" had a phone in his house at this time, thereby potentially demonstrating the falsity of this claim.

43. The Petitioner avers that counsel's failure to interview and/or question these individuals was not proper trial strategy and was so unreasonable that no competent lawyer would have chosen it or that the alternatives not chosen offered a potential for success substantially greater than the tactics utilized.

44. The Petitioner avers that but-for the errors of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

## No Waiver and Statement of Lack of Previously Litigated Claims

45. Averments one (1) through forty-four (44) are incorporated herein by reference as if they had been stated in their respective entireties.

46. Although the Petitioner has filed a direct appeal in this matter, said appeal did not raise ineffectiveness of his trial counsel as an issue. Thus, there are no issues that have been waived or previously litigated. See *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002)(indicating that claims of ineffectiveness of trial counsel cannot be raised for the first time on direct appeal but must instead be raised in petition for post conviction collateral relief).

**WHEREFORE**, the above named Petitioner, Tyshaunt Love, by and through his attorney, Justin J. McShane, Esquire, respectfully requests that this Honorable Court:

    a. Order an evidentiary hearing pursuant to Pa. R.Crim. P 908(A)(2), as there are material issues of fact that are raised by this Petition;

    b. Issue a Writ of Habeas Corpus Ad Testifcandum to the Petitioner, as he is to be called as a witness, present evidence and has a right to be present at the evidentiary hearing pursuant to Pa. R.Crim. P. 908(c); and

    c. Grant such other relief as may be appropriate.

Respectfully submitted,
*The McShane Firm, LLC*

Justin J. McShane, Esquire
Attorney for Petitioner
4807 Jonestown Road, Suite 148
Harrisburg, Pennsylvania 17109
Telephone: (717) 657-3900
Fax: (717) 657-2060
Attorney ID No.:87919

| COMMONWEALTH OF PENNSYLVANIA | : IN THE COURT OF COMMON PLEAS |
| --- | --- |
| | : DAUPHIN COUNTY, PENNSYLVANIA |
| v. | : |
| | : No.: CP-22-CR-0937-2002 |
| TYSHAUNT LOVE | : |
| | : CHARGE: MURDER OF THE THIRD DEGREE |

TO THE CLERK OF COURT DAUPHIN COUNTY:

## CERTIFICATE OF SERVICE

I, Justin J. McShane, Esquire, hereby certify that the following service has been completed in compliance with the Rules of Criminal Procedure:

<u>Via first class mail</u>
Sean M. McCormack, Esquire
District Attorney's Office
Dauphin County Courthouse
Front & Market Sts.
Harrisburg, PA 17101

Respectfully submitted,
*The McShane Firm, LLC*

Justin J. McShane, Esquire
Attorney for Defendant
4807 Jonestown Road, Suite 148
Harrisburg, Pennsylvania 17109
(717) 657-3900
Attorney ID No.: 87919