IN THE SUPERIOR COURT OF PENNSYLVANIA

---

Docket No. 339 MDA 2011

---

COMMONWEALTH OF PENNSYLVANIA,

Appellee

v.

TYSHAUNT LOVE,

Appellant

---

### Brief for Appellant

Petitioner seeks review of the PCRA court's Order dated January 18, 2011, denying Petitioner relief under the Post Conviction Relief Act ("PCRA"). This matter has a lower court docket number of CP-22-CR-937-2002.

---

Respectfully submitted,
*The McShane Firm, LLC*

Justin McShane, Esquire
Attorney No. 87919
Attorney for Appellant
4807 Jonestown Rd., Ste 148
Harrisburg, PA 17109
717-657-3900
fax: 717-657-2060

Joshua Auriemma, Esquire
Attorney No. 310003
Attorney for Appellant
4807 Jonestown Rd., Ste 148
Harrisburg, PA 17109
717-657-3900
fax: 717-657-2060

# I.    Table of Contents

I.      Table of Contents..................................................................i

II.     Table of Authorities ...........................................................ii

III.    Statement of the Question Involved .....................................1

IV.     Statement of Jurisdiction.....................................................2

V.      Order or Other Determination in Question...........................3

VI.     Statement of Scope and Standard of Review .........................4

VII.    Statement of the Case..........................................................5

VIII.   Summary of the Argument .................................................10

IX.     Argument .........................................................................13

    A.  Trial counsel's failure to call certain witnesses constituted ineffective assistance of counsel.......................13

    B.  Trial counsel's failure to interview the eyewitness alternative suspect, and other suspects, constituted ineffective assistance of counsel. ..........................................20

X.      Conclusion .......................................................................28

## II.    Table of Authorities

**Cases**

*Commonwealth v. Carr*, 768 A.2d 1164 (Pa.Super. 2001) ...............4

*Commonwealth v. Fahy*, 959 A.2d 312 (Pa. 2008) ...........................4

*Commonwealth v. Henry*, 706 A.2d 313 (Pa. 1997) ........ 10, 14, 18, 19

*Commonwealth v. Johnson*, 966 A.2d 523 (Pa. 2009) ...............15, 26

*Commonwealth v. Kimball*, 724 A.2d 326 (Pa. 1999) ................13, 14

*Commonwealth v. Mabie*, 359 A.2d 369 (Pa. 1976).................. 20, 25

*Commonwealth v. Perry*, 644 A.2d 705 (Pa. 1994) .........................20

*Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987) .......................... 13

*Commonwealth v. Wallace*, 724 A.2d 916 (Pa. 1999) ..................... 22

*Commonwealth v. Weiss*, 606 A.2d 439 (Pa. 1992) .........................20

*Strickland v. Washington*, 466 U.S. 668 (1984) .................. 11, 19, 27

## Statutes & Other Authorities

42 Pa. C.S.A. §742 ..........................................................................2

42 Pa.C.S.A. § 9541 ...................................................................... 13

Act of July 9, 1976, P.L. 586, No. 142, §2..........................................2

### III. Statement of the Question Involved

1.  Trial counsel's failure to call exculpatory witnesses at trial,
    unless the decision is made pursuant to a reasonable stra-
    tegic decision, generally constitutes ineffective assistance.
    Trial counsel failed to call the alternative suspect, two wit-
    nesses who gave statements indicating that the alternative
    suspect had confessed to the murder, a witness with whom
    the alternative suspect was living who gave a statement to
    the police that the witness owned a gun, and a witness who
    gave a statement to police that the alternative suspect
    came into her house following the murder and retrieved a
    jacket from her closet—and subsequently testified at the
    PCRA hearing that a bullet fell out of the jacket. Was trial
    counsel ineffective?

    *(Suggested answer: yes; the lower court disagreed.)*

2.  Trial counsel has a duty to interview witnesses, particular-
    ly eyewitnesses, and failure to do so generally constitutes
    *per se* unreasonableness. Trial counsel failed to interview
    an alleged eyewitness to the crime, and that eyewitness
    was also the defendant's alternate suspect and the entire
    basis for the defendant's theory of the case. Trial counsel
    also failed to interview various other exculpatory witness-
    es. Was trial counsel ineffective?

    *(Suggested answer: yes; the lower court disagreed.)*

## IV.   Statement of Jurisdiction

The Superior Court is vested with jurisdiction to hear this appeal

pursuant to the Act of July 9, 1976, P.L. 586, No. 142, § 2, effective

June 27, 1978, as amended, 42 Pa. C.S.A. § 742, which provides:

> The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court.

*Id.*

V.   Order or Other Determination in Question

AND NOW, this 18th day of January, 2011, upon consideration of

Defendant's PCRA Petition and the Commonwealth's Answer

thereto;

IT IS HEREBY ORDERED that Defendant's PCRA petition is de-

nied.

BY THE COURT:

/s/ BRUCE F. BRATTON, J.

## VI.  Statement of Scope and Standard of Review

The Scope of Review in reviewing a lower court's denial of a PCRA petition is "limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party, in this case, the Commonwealth." *Commonwealth v. Fahy*, 959 A.2d 312, 316 (2008).

Similarly, the Standard of Review in reviewing the propriety of a PCRA court's denial of a petition for relief considers whether the record supports the PCRA court's findings, and whether the order is free of legal error. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa.Super. 2001).

## VII.  Statement of the Case

*Procedural Posture*

On Friday, December 20, 1996, police discovered the body of Iris Fennell, who had been shot at close range. Notes of Testimony, September 14–15, 2005, at 84. Petitioner, Tyshaunt Love, was subsequently arrested and charged with the murder of Fennell—his girlfriend. Trial in this matter commenced on September 12, 2005, with Paul W. Muller, Esquire, and Nathan C. Giunta, Esquire, serving as counsel of record during the trial. The trial continued each weekday until September 20, 2005, whereupon Mr. Love was found guilty of Murder of the Third Degree. On October 28, 2005, Mr. Love was sentenced to serve 15 to 30 years in SCI Camp Hill. A timely appeal followed, whereby this Honorable Court affirmed the decision of the trial court in a memorandum opinion dated May 8, 2007. The matter was made final following

the Supreme Court of Pennsylvania's denial of Mr. Love's Petition for Allowance of Appeal.

On February 24, 2009, Mr. Love filed a Motion for Post-Conviction Collateral Relief, and on February 24, 2009, PCRA counsel was appointed, leading to a supplemental PCRA petition filed on December 29, 2009. PCRA evidentiary hearings were held in front of the Honorable Bruce F. Bratton on April 27, 2010, August 6, 2010, and November 4, 2010. On January 18, 2011, Judge Bratton issued an order denying Mr. Love's PCRA petition, and this timely appeal followed.

### Relevant Factual History

Mr. Love has always maintained that he is innocent of Ms. Fennell's murder. Accordingly, trial counsel's theory of the case revolved around placing blame on an alternative suspect—Rasheed LaQuan Williams, a.k.a. "Kazar." While police officers ques-

tioned "Kazar," no one from the Public Defender's Office ever sought to interview him. Notes of Testimony of November 4, 2010 (hereinafter "N.T. 3"), at 24. In support of the alternate suspect theory, it came out at trial, during direct examination of the Commonwealth's witness, that blood from the victim was found on "Kazar's" Timberland boots. Notes of Testimony of September 14–15, 2005, at 191.

The following evidence was presented at Mr. Love's PCRA Evidentiary Hearing—but not during the defendant's original trial—tending to exculpate Mr. Love from the murder while simultaneously incriminating "Kazar" in furtherance of the defense theory of the case:

1.  Kendra Smith testified that "Kazar" entered her house soon after the murder in order to retrieve a jacket from which a bullet had fallen out. Notes of Testimony of August 6, 2010 (hereinafter

"N.T. 2"), at 70-71. On September 7, 2001, she gave a statement to the police that her boyfriend, Corey Alston, kept a gun in the house during the period in which "Kazar" was staying in their home, and the period in which Iris was killed. PCRA Hearing Defendant's Exhibit 23, at 149.

2. On September 13, 2001, Corey Alston gave a statement to the police that while "Kazar" was staying in Mr. Alston's house during the period in which the murder occurred, Mr. Alston owned a handgun. PCRA Hearing, Defendant's Exhibit 26.

3. On September 19, 2000, Keith Herndon gave a statement to the police that while in prison, "Kazar" confessed that he "should have done this girl Candy like he did that bitch Iris." PCRA Hearing Defendant's Exhibit 25.

4. On September 29, 2000, Carlos Hill gave the following statement to the police, the relevant portion of which has been excerpted: "I asked him about the murder. At first he did not want to talk about

it. But then he said to me he don't know why he did it. I asked him why would he do that to Iris. He said to me he don't know, he was high." PCRA Hearing, Defendant's Exhibit 26.

5. "Kazar's" evasive in-court testimony. At the PCRA hearing, "Kazar" was extremely evasive in his responses to the attorneys. Because "Kazar" was never called to trial, the finder of fact could not make a credibility assessment into his character, and the Petitioner suggests that this was a clear error, particularly given the alternate suspect's demeanor upon being questioned.

## VIII. Summary of the Argument

Trial counsel has a duty to call exculpatory witnesses to the stand unless the decision not to do so is made pursuant to a reasonable trial strategy. No such reasonable strategy was present here. Pursuant to *Commonwealth v. Henry*, satisfactions of the five prongs of the *Henry* test establishes both the performance and prejudice elements of the *Strickland* test. The first four prongs of the analysis are almost unquestionably satisfied for each and every witness that trial counsel failed to call. The fifth prong asks the Court to consider whether failure to call the witnesses was so prejudicial as to result in an unfair trial. Appellant alleges that failure clearly resulted in an unfair trial. Had trial counsel called the witnesses discussed *infra*, the jury would have heard evidence that the alternate suspect confessed to the victim's killing to two separate uninvolved individuals, that he retrieved a jacket with a bullet in it after the killing, and that he had access to a gun. Coupled with the

alternate suspect's low credibility and questionable demeanor at the PCRA hearing, failure to produce all of this evidence prejudiced Mr. Love to the point where he received an unfair trial.

Failure to interview an eyewitness, particularly where the eyewitness is an alternate suspect and the cornerstone of the defendant's theory of the case, in addition to various other exculpatory witnesses, was *per se* unreasonable, satisfying the performance element of the *Strickland* test. Trial counsel's reliance on adversarial police reports was unreasonable, and did actually result in entirely missing crucial evidence. In particular, Kendra Smith testified for the very first time at the PCRA hearing that she recovered a bullet from the alternate suspect's jacket. Failure to interview Ms. Smith was clearly prejudicial to the defendant's case, as was the decision not to interview several other clearly exculpatory witnesses, including the alternate suspect. The decision not to interview these witnesses has no rational strategic basis, as coun-

sel has absolutely nothing to lose, and everything to gain by taking an hour or two to sit down with these witnesses, particularly where the nature of the offense is so serious. Accordingly, trial counsel's decision not to interview these witnesses was, when examined as to the totality of the circumstances, prejudicial to the defendant's case, and constituted ineffective assistance of counsel.

## IX. Argument

### A. Trial counsel's failure to call certain witnesses constituted ineffective assistance of counsel.

With respect to ineffective assistance of counsel claims under the Post Conviction Relief Act ("the Act"),[1] a petitioner's claim is evaluated according to the three-pronged analysis developed by the Supreme Court of Pennsylvania within *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). The applicable standard considers whether the petitioner established, by a preponderance of the evidence and in the specific circumstances of the case, that prior counsel's actions or inactions so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Kimball*, 724 A.2d 326 (Pa. 1999). In order to satisfy this standard, the petitioner must show: (1) that the claim is of arguable merit; (2) that counsel

---

[1] 42 Pa.C.S.A. § 9541.

has no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Id.* Moreover, where a petitioner demonstrates that counsel's ineffectiveness has created a reasonable probability that the outcome of the proceedings would have been different, then no reliable adjudication of guilt or innocence could have taken place. *Id.*

Trial counsel will be found ineffective for failing to call or investigate witnesses when the petition can show "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness' testimony was so prejudicial as to have denied the [petitioner] a fair trial." *Commonwealth v. Henry*, 706 A.2d 313, 329 (Pa. 1997). While these five elements are sepa-

rate and distinct from the general ineffectiveness inquiry, the Supreme Court of Pennsylvania recently held that satisfaction of these five elements also satisfies both the performance the prejudice prongs of the Act. *Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009). We shall now examine all of the witnesses who would satisfy these requisite elements.

Ms. **Kendra Smith** was (1) interviewed by the police, and (2) stated that she would testify at trial. PCRA Hearing Defendant's Exhibit 23, at 149. (3) Trial counsel knew of the witness as a result of discovery. N.T. 2 at 127. (4) The witness did testify for the defense at the PCRA trial, and said that she would have answered the questions in the same manner had anyone from Mr. Love's trial team contacted her. N.T. 2, at 72. (5) Ms. Smith testified at the PCRA hearing that "Kazar," the defendant's alternate suspect, entered her house soon after the murder in order to retrieve a jacket from which a bullet had fallen out. Additionally, prior to

trial, Ms. Smith told the police that her boyfriend kept a gun in her house while "Kazar" was staying with them. This would have reinforced the defendant's theory of the case, as it would establish that "Kazar" had access to a gun.

Mr. **Corey Alston** (1) gave a statement to the police, explaining that (2) he would testify if called at trial. (3) Trial counsel knew of the witness as a result of discovery. (4) Mr. Alston admitted in his police interview that Kazar was living with him when Iris was murdered, and that Mr. Alston himself owned a gun that he kept in the house. Even if he would not have admitted this at trial, the defense could have impeached him based on his police interview, which would be tantamount to his testifying for the defense in satisfaction of element (4). With regard to (5), this evidence places "Kazar" in a residence where a gun was kept. As "Kazar" is the alternate suspect, this evidence would have substantially bol-

stered the evidence that "Kazar" had access to a gun and would therefore increase the probability that he killed Iris.

On September 19, 2000, Mr. **Keith Herndon** (1) gave a statement to the police, (2) agreeing to testify in court if necessary. (3) Trial counsel knew of the witness as a result of discovery. (4) Mr. Herndon's statement explained that "Kazar" had confessed to the killing, specifically by saying that he "should have done this girl Candy like he did that bitch Iris." Even if he would not have admitted this at trial, the defense could have impeached him based on his police interview, which would be tantamount to his testifying for the defense in satisfaction of element (4). (5) Any evidence that "Kazar" killed Iris is clearly exculpatory, and would only positively affect Mr. Love's defense.

On September 29, 2000, Mr. **Carlos Hill** (1) gave a statement to the police, (2) agreeing to testify in court if necessary. (3) Trial

counsel knew of the witness as a result of discovery. (4) Mr. Hill's statement explained that "I asked him about the murder. At first he did not want to talk about it. But then he said to me he don't know why he did it. I asked him why would he do that to Iris. He said to me he don't know, he was high." Even if he would not have admitted this at trial, the defense could have impeached him based on his police interview, which would be tantamount to his testifying for the defense in satisfaction of element (4). (5) Again, any evidence that "Kazar" killed Iris is clearly exculpatory, and would only positively affect Mr. Love's defense. Indeed, having seemingly anticipated the value of Mr. Hill's testimony, "Kazar" initiated an altercation with Mr. Hill in the prison on the morning prior to the PCRA hearing. N.T. 3, 96 lis 17–23.

Even if this Learned Court is not convinced that failure to call any one of the witnesses was not so prejudicial as to deprive Mr. Love of a fair trial as contemplated by *Henry*, examination of the totali-

ty of the circumstances together paints a clear picture of clear prejudice sufficient to deprive the defendant of a fair trial. Defense counsel failed to introduce two existing statements made by the alternative suspect confessing to the murder; defense counsel failed to introduce existing evidence that "Kazar" had access to a gun; and defense counsel failed to present existing evidence that "Kazar" retrieved a jacket after Iris had been murdered, from which a bullet had fallen out. These four pieces of information produced readily at the PCRA hearing would satisfy both the *Strickland*[2] and *Henry* standards: presentation of this evidence at trial would reasonably have led to a different verdict, and failure to present this evidence at trial was so prejudicial as to deprive Mr. Love from a fair trial.

-----

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

## B. TRIAL COUNSEL'S FAILURE TO INTERVIEW THE EYEWITNESS ALTERNATIVE SUSPECT, AND OTHER SUSPECTS, CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

The question of whether trial counsel was ineffective for failing to interview a witness is separate and distinct from whether he or she was ineffective for failing to call a witness to the stand at trial. As an overarching issue, failure to interview witnesses may be *per se* unreasonable. *Commonwealth v. Perry*, 644 A.2d 705 (Pa. 1994); cf. *Commonwealth v. Weiss*, 606 A.2d 439 (Pa. 1992); *Commonwealth v. Jones*, 437 A.2d 958 (Pa. 1981); *Commonwealth v. Mabie*, 359 A.2d 369 (Pa. 1976). This is particularly so where the witness not questioned was an alleged eyewitness to the crime. *Mabie*, 359 A.2d at 374–75. Appellant suggests that this failure is even more egregious where the eyewitness is also the alternative suspect and the main character in the defense theory of the case.

While the five-part test to determine whether counsel was ineffective for failing to call a witness at trial essentially revolves around determining whether trial counsel could have made a reasonable strategic decision in not calling the witness, there can be no such strategic decision in the context of a mere interview. Nothing said at the interview could have caused harm to the defendant's case. Indeed, the absolute worst case scenario would have been the eyewitness refusing to talk to defense counsel, and such a result would have had exactly the same outcome as not seeking the interview in the first place, except that trial counsel would have exercised due diligence.

In the present case, "Kazar" was the defendant's alternate suspect. Much of the defendant's case revolved around pinning the blame on "Kazar." Attorney Muller argued at the PCRA hearing that his reasons for not wanting to call "Kazar" to the stand were (1) that he would invoke his Fifth Amendment privilege against

self-incrimination, and (2) he would likely testify to the detriment of the defendant; although this brief takes the stance that such allegations are insufficient and unsubstantiated in Part A, supra, assuming, *arguendo*, that the court is persuaded by Attorney Muller's arguments, they are inapplicable in the instance of failing to even interview "Kazar."

As the performance requirements of *Strickland* have been met for the above reasons, this Court is left to consider the issue of prejudice. Appellant must establish that there is a reasonable probability that had the trial attorneys interviewed "Kazar," Kendra Smith, Corey Alston, and Carlos Hill, and had they called the witnesses identified in Section A, *supra*, there is a reasonable probability that the outcome of the proceeding would have been different. *See Commonwealth v. Wallace*, 724 A.2d 916, 921 (Pa. 1999). Given the totality of the circumstances, Appellant respectfully avers that he has satisfied this requirement.

Defense counsel did not interview Kendra Smith,[3] Corey Alston,[4] Carlos Hill,[5] or "Kazar."[6] Kendra Smith testified at the PCRA hearing that "Kazar" ran into her house following Iris' murder and retrieved a jacket from which a bullet had fallen out. The PCRA hearing was the first occasion on which this evidence came out. Had defense counsel interviewed Ms. Smith, it is reasonably possible that she would have told them the same thing she told PCRA counsel, which could have led to the discovery of other exculpatory evidence. Corey Alston's testimony would have helped trial counsel solidify their theory of the case, and allowed them to paint "Kazar" as someone who had access to a gun. Carlos Hill was witness to "Kazar" confessing to killing Iris—testimony with

---

[3] N.T. 2, 68 lis 7; N.T. 3, 53 lis 7–13.

[4] N.T. 2, 89 lis 5; N.T. 3, 53 lis 7–13.

[5] N.T. 3, 95 lis 22.

[6] N.T. 3, 24 lis 1–5.

clearly exculpatory weight, particularly from someone with no vested interest in the case.

While defense counsel seems to have been satisfied by the narrative reports written by police officers, these officers are inherently adversarial parties and are subject to cognitive bias in report writing. It is simply not reasonable for trial counsel to blindly trust such a source without independent verification. Moreover, it is one thing to have assess the value of a witness after having met the witness, interviewed the witness, probed the witness for demeanor and credibility, performed due diligence on his or her background, and come to a strategic conclusion that incorporating the witness into the trial would cause more harm than good; it is another thing altogether to simply assume all of the foregoing to be true based upon officer testimony from a narrative report. Trial counsel should have independently verified the information and interviewed the potentially exculpatory witnesses.

"Kazar" is alleged, by the defendant, to have murdered Iris. Guillermina Cruz alleged to have seen "Kazar" at the scene of the murder. Trial counsel had absolutely nothing to lose by seeking to interview "Kazar." Indeed, "[T]he value of the interview is to inform counsel of the facts of the case so that he may formulate strategy." *Commonwealth v. Mabie*, 359 A.2d at 374. We do not know what could have happened had the trial attorneys interviewed "Kazar." However, there is a spectrum of likely outcomes: on the unlikely end of the spectrum, "Kazar" could have agreed to the interview, confessed to the murder, and proclaimed Mr. Love's innocence. More likely is the possibility that "Kazar" would have agreed to the interview, and answered questions selectively and evasively, as he did at the PCRA hearing. Alternatively, "Kazar" could have declined defense counsel's request for an interview entirely. In any case, Mr. Love's case would not be harmed by the interview, and could only be improved had "Ka-

zar" been interviewed by defense counsel. In recognition of this clear fact, our Supreme Court has found that for ineffectiveness claims arising out of a failure to investigate, a court should not conduct the typical inquiry into whether counsel's conduct lacked a "reasonable basis," or whether it was part of a reasonable trial strategy. *Johnson*, 966 A.2d at 536.

True, we can never know what would have happened had "Kazar" and the other witnesses been interviewed by defense counsel. However, there is certainly a reasonable probability that at a minimum, "Kazar" would have made incriminating or contradicting statements to defense counsel, which reasonably could have led to the discovery of unknown evidence tending to exculpate the defendant. Additionally, interviewing the other witnesses would likely have led to the discovery of additional exculpatory evidence, particularly in the case of Ms. Smith. Accordingly, when viewed in conjunction with trial counsel's failure to call the

aforementioned witnesses, Mr. Love satisfied the *Strickland* requirements at his evidentiary hearing.

## X.    Conclusion

Wherefore, trial counsel's failure to interview the alternate suspect eyewitness and various other exculpatory witnesses, in conjunction with their failure to call certain exculpatory witnesses constituted ineffective assistance of trial, and Appellant respectfully requests the grant of a new, fair trial, as a remedy.

Respectfully submitted,
*The McShane Firm, LLC.*

Joshua Auriemma, Esquire
Attorney No. 310003
Attorney for Appellant
4807 Jonestown Rd., Ste 148
Harrisburg, PA 17109
717-657-3900
fax: 717-657-2060

# Appendix 1

COMMONWEALTH OF PENNSYLVANIA,  : IN THE COURT OF COMMON PLEAS,
: DAUPHIN COUNTY, PENNSYLVANIA

v.

: CRIMINAL – PCRA

TYSHAUNT LOVE

: NO. CP-22-CR-937-2002

## MEMORANDUM OPINION

Petitioner, Tyshaunt Love, has filed a Petition under the Post-Conviction Relief

Act (PCRA), 42 Pa.C.S. § 9541, *et seq*. After reviewing the original petition and the

supplemental petition filed by appointed counsel, and after evidentiary hearings on April

27, 2010, August 6, 2010, and November 4, 2010, this Court concludes Petitioner is not

entitled to post-conviction relief and will enter an appropriate Order.

The procedural history of the case is as follows:

On September 20, 2005, Petitioner was convicted by the jury of 3rd degree murder

of Iris Fennel and on September 28, 2005, he was sentenced to a term of incarceration of

not less than fifteen nor more than thirty years. Petitioner's post-sentence motion was

denied on December 28, 2005, the Superior Court affirmed the sentence on May 8, 2007,

and on January 16, 2009, the Supreme Court denied Petitioner's Petition for Allowance

of Appeal. Petitioner filed a timely *pro se* PCRA petition on February 24, 2009.

Attorney Justin McShane was appointed to represent Petitioner on March 30, 2009, and

counsel filed an Amended PCRA Petition on December 29, 2009. On April 14, 2010,

counsel was permitted leave to further amend his PCRA Petition to include additional

issues. The Commonwealth filed a formal response on December 6, 2010 after all hearings were concluded.

Petitioner claims trial counsel was ineffective for failing to interview or question certain individuals, for failing to obtain independent tests of DNA and blood evidence, for failing to make an oral motion to reconsider the trial court's ruling which barred motive evidence from a potential alternative suspect, and for failing to fully consult with Petitioner prior to trial.[1]

In order to succeed on a claim that counsel provided ineffective assistance, a defendant must show that the underlying claim has arguable merit, that counsel did not have a reasonable basis for the act or omission, and that, but for counsel's error or omission, there is a reasonable probability that the outcome of the proceedings would have been different. Commonwealth v. Pierce, 786 A.2d 203, 213 (Pa. 2001); Commonwealth v. Kimball, 724 A.2d 326, 333 (Pa. 1999). Counsel is presumed to be effective, and the burden is on the defendant to prove otherwise. Commonwealth v. Cooper, 941 A.2d 655, 664 (Pa. 2007). A PCRA petitioner must demonstrate prejudice by showing that there is a reasonable probability that, but for counsel's alleged error or omission, the result of the proceedings would have been different, such that confidence in the outcome of the proceedings is undermined. Commonwealth v. Sneed, 899 A.2d 1067, 1084 (Pa. 2006) (citing Strickland v. Washington, 466 U.S. 668 (1984)). "[A] specific factual predicate must be identified to demonstrate how a different course of

---

[1] Although stated in Petitioner's request to amend his PCRA Petition, arguments on the last two issues were not developed in the amended PCRA petition, or in Petitioner's Post-Hearing Memorandum. We presume, therefore, that those claims have been abandoned by Petitioner.

action by trial counsel would have better served [the petitioner]'s interest." Commonwealth v. Cook, 952 A.2d 594, 614 (Pa. 2008) (internal citation omitted). PCRA relief is not warranted where the defendant fails to meet his burden of establishing that he was prejudiced by counsel's actions or inactions, Commonwealth v. Chazin, 873 A.2d 732 (Pa. Super. 2003), nor where the verdict would not have been different in the face of other significant evidence. Commonwealth v. Small, 980 A.2d 549 (Pa. 2009).

Failure to call a witness to testify is not *per se* ineffective assistance of counsel, as such decision generally involves a matter of trial strategy. See Commonwealth v. Cox, 983 A.2d 666, 693 (Pa. 2009); Commonwealth v. Washington, 927 A.2d 586, 599 (Pa. 2007). The test is not whether other alternatives to counsel's actions were more reasonable, employing a hindsight evaluation of the record, but whether counsel's decisions had any reasonable basis. Commonwealth v. Speight, 677 A.2d 314, 322 (Pa. 1996) (where decision by trial counsel had "some reasonable basis designed to effectuate ... client's best interests, ... inquiry ends"). "One may always second-guess strategy after a trial is over; ... [b]ut, however hindsightedly clean the trial might now appear had [additional witnesses] been called, the legal standard is not cleanliness, much less perfection." Small, at 560 (defendant did not meet his burden of proving the outcome would have been different had additional witnesses testified).

Petitioner alleges trial counsel was ineffective for failing to interview several individuals who would have potentially cast reasonable doubt upon the Commonwealth's case and for failing to call them to testify at the trial. Paragraph 42 of the supplement to the PCRA Petition identifies ten witnesses who, Petitioner claims, should have been

interviewed and called to testify, and summarizes each witnesses' anticipated testimony.[2]

Petitioner avers that trial counsels' failure to interview or question those individuals was not proper trial strategy and was so unreasonable that no competent lawyer would have chosen to proceed in such a manner. Petitioner also avers that but for counsels' errors, there is a reasonable probability that the outcome of the proceedings would have been different.

While PCRA counsel appears to have left virtually no rock unturned in attempting to interview potential witnesses this does not automatically deem trial counsels' representation ineffective. The test is whether or not trial counsel's acts or omissions would have caused the outcome of the proceeding to have been different, not whether trial counsel tried the case to perfection. In fact, trial counsel did present evidence during the trial to support the theory that someone else, specifically LaQuan Williams, and not Petitioner, committed the murder. The jury, however, chose to believe the only eyewitness to the shooting of Iris Fennel, Guillermina Cruz, who testified at the preliminary hearing[3] that she saw Petitioner argue with the victim, beat her and drag her upstairs with a gun in his hand. She testified that she then heard a gunshot and a thud, and, when she went upstairs, she saw Petitioner fire a second shot at the victim. This same witness also confirmed that another man, LaQuan Williams, was in the house at the time of the shooting.

---

[2] The Supplement to the PCRA Petition lists the following witnesses who Petitioner alleges should have been called as possible witnesses: LaQuan Williams, Kendra Smith, Keith Herndon, Larry Fennel, Anthony Knight, Daelene Saez, Carlos Hill, Linda Gianquitto, Floyd Banks, and "Pop-Pop".

[3] Ms. Cruz was declared unavailable at the time of trial. However, this determination of unavailability was made by this Court during the trial and subsequently argued before the Superior Court. Therefore, the claim is waived as previously litigated for purposes of this PCRA claim.

During the PCRA evidentiary hearing on November 4, 2010, Paul Muller, Petitioner's trial counsel, explained why potential witnesses were not called to testify at trial. Attorney Muller did not call LaQuan Williams to testify for the defense because LaQuan would have invoked his 5th Amendment immunity against self-incrimination had he been called to testify for or against Petitioner. He did, indeed, when called by PCRA counsel to testify at the PCRA hearing.

Kendra Smith testified at the August 6, 2010 PCRA hearing that she may not have been available to testify at Petitioner's trial, and Attorney Muller testified that he questioned the reliability of her statements to police as she admitted to drinking a few beers prior to providing her statement to police. Petitioner alleged that at trial she would have testified that LaQuan borrowed a gun belonging to Cory Alston and that the gun was returned with blood on it. During the PCRA hearing, Ms. Smith stated that LaQuan ran into her house sometime after Iris Fennel was killed, threw a jacket into her closet, and that a bullet fell out of the jacket. This was the first time she discussed the jacket and the bullet on the record. Attorney Muller testified that he did not call Ms. Smith to testify during Petitioner's trial because at that time Ms. Smith was stating that the dates did not match up, so she would not have been a good alibi witness for Petitioner and her testimony appeared to lack credibility.

Attorney Muller also testified that he could not locate Keith Herndon, who allegedly claimed LaQuan had admitted to killing Iris. He also said he knew Mr. Herndon was not a credible witness as he had a long history of *crimen falsi* charges and he was a pathological liar. Keith Herndon and Carlos Hill were both cellmates of

LaQuan at different times and their alleged testimony was that LaQuan admitted to each of them that he killed Iris. This testimony could have raised hearsay issues if presented during trial. See Pa.R.E. 804(b)(3) ("In a criminal case, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."). Carlos Hill changed his original story in a later interview and would have faced credibility questions as well.

Larry Fennel's alleged testimony would have been about LaQuan's prior attack and rape of another woman prior to Iris's murder, and that LaQuan told him her knew Iris told the authorities about this prior incident and that LaQuan threatened to kill Iris because of this. At the PCRA hearing, attorney Muller stated that Mr. Fennel could not be found prior to Petitioner's trial and that he had moved numerous times during the pendency of the case.

Anthony Knight's alleged testimony would have been that Ms. Cruz told him that she killed Iris and that he helped Ms. Cruz hide from police following Iris' murder. Petitioner also states that Mr. Knight was at one point an alternate suspect in Iris's murder; therefore, he could have exercised his 5th Amendment immunity during Petitioner's trial. Attorney Muller testified that they were unable to find Mr. Knight prior to Petitioner's trial but that he was under subpoena if he ever showed up on the court's radar. Also, Petitioner did not show that Mr. Knight was available or willing to testify at Petitioner's trial, or that any testimony he had to offer would have been helpful to Petitioner's case.

Daelene Saez was apparently Iris Fennel's best friend and would have testified regarding how afraid Iris was of LaQuan Williams and that she was afraid something would happen while LaQuan was staying at her house while hiding from police. Attorney Muller stated that he believed that she testified at trial, which she did. See N.T. Trial, 9/15/05, at 341-353.

Linda Gianquitto's alleged testimony was that Ms. Cruz was talking about fighting Iris on the night of the murder and that Ms. Cruz told Ms. Gianquitto that when she and Petitioner left Iris' home that evening, Iris was alive. Attorney Muller stated at the PCRA hearing that Ms. Gianquitto would have been a terrible witness for Petitioner's case, which he determined after numerous interviews with Ms. Gianquitto.

Petitioner alleges that Floyd Banks would have testified that he overheard Petitioner and Carlos Hill discussing Petitioner's case at which time Petitioner claimed his innocence. During the November 4, 2010 PCRA hearing, Attorney Muller stated that he believed Mr. Banks had died prior to his involvement in the case.

Finally, Petitioner claims that he spent the night of Iris' murder at someone named "Pop-Pop's" house and that Ms. Cruz's statement was that Petitioner made a phone call from Pop-Pop's house. Petitioner did not believe Pop-Pop had a phone in his house, which demonstrates the falsity of Ms. Cruz's claim. Attorney Muller testified that he was unsuccessful in finding anyone by this name, and had no other information to determine the identity of "Pop-Pop" because no one could tell them who he was.

Petitioner did not present at the PCRA hearings most of the witnesses that he alleged should have been interviewed by trial counsel, and the witnesses who did testify

were not cooperative and did not provide much helpful information, certainly not the type of testimony Petitioner claimed each would have provided to exculpate Petitioner. Petitioner has not, we believe, established that testimony from any additional witnesses would have changed the outcome of the proceedings in light of the evidence presented against him at trial. Therefore, we do not find trial counsel to have been ineffective for failing to interview potential additional witnesses, nor for failing to call them to testify at trial.

Finally, Petitioner argues trial counsel was ineffective for failing to conduct independent tests of DNA and blood evidence. As with the previous claim of ineffectiveness, Petitioner fails to establish how the outcome of the trial would have been different had trial counsel conducted independent testing of the DNA and blood evidence. The DNA and blood evidence presented at Petitioner's trial supported the defense theory that LaQuan Williams was the murder, as the victim's blood was found on his shoe, and none of the victim's blood was found on Petitioner's person or clothing. Therefore, trial counsel cannot be found ineffective for failing to conduct additional testing where the Commonwealth's evidence admitted at trial supported Petitioner's claim which he was suggesting further testimony would have supported.

Accordingly, we enter the following:

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
vs.                                    : NO. CP-22-CR-937-2002
:
TYSHAUNT LOVE                          : PCRA

## ORDER OF COURT

AND NOW, this 18th day of January, 2010, upon

consideration of Defendant's PCRA Petition and the Commonwealth's Answer thereto;

IT IS HEREBY ORDERED that Defendant's PCRA petition is denied.


BY THE COURT:


_____
BRUCE F. BRATTON,                    J.

DISTRIBUTION:
Judge Bratton
Jason E. McMurry, Deputy District Attorney
Justin McShane, Esquire, 4807 Jonestown Road, Suite 148, Harrisburg, PA 17109
Clerk of Courts

IN THE SUPERIOR COURT OF PENNSYLVANIA

---

Docket No. 339 MDA 2011

---

COMMONWEALTH OF PENNSYLVANIA,

Appellee

v.

TYSHAUNT LOVE,

Appellant

---

### Certificate of Service

---

I, Joshua Auriemma, Esquire, on this 27th day of September, 2011, hereby certify that service of the following Appellant's Brief has been made in accordance with the Rules of Appellate Procedure via first-class mail to the following parties:

1. Christopher Schmidt/ Office of the District Attorney / 101 Market Street, 2nd Floor / Harrisburg, PA 17101

Respectfully submitted,
*The McShane Firm, LLC*

Joshua Auriemma, Esq.
Attorney No. 310003
Attorney for Appellant
4807 Jonestown Rd., Suite 148
Harrisburg, PA 17109
717-657-3900 / f: 717-657-2060