IN THE SUPERIOR COURT OF PENNSYLVANIA
MIDDLE DISTRICT

———————————————

NO. 339 MDA 2011

———————————————

COMMONWEALTH OF PENNSYLVANIA,
Appellee

vs.

TYSHAUNT LOVE,
Appellant

———————————————

BRIEF OF APPELLEE

———————————————

Appeal of Tyshaunt Love from the order of the Honorable Bruce F.
Bratton, Judge, Court of Common Pleas, Dauphin County, dated January
18, 2011, and docketed to No. CP-22-CR-0000937-2002.

Edward M. Marsico, Jr.
District Attorney
I.D. No. 53915
Christopher J. Schmidt
Deputy District Attorney
I.D. No. 87617
Attorneys for the Commonwealth

Dauphin County Court House
Harrisburg, Pennsylvania 17101
(717) 780-6767

## TABLE OF CONTENTS

                                                                 **Page**

I.     COUNTER-STATEMENT OF QUESTION INVOLVED ........................ 1

II.    COUNTER-STATEMENT OF THE CASE ............................................ 2

III.   SUMMARY OF ARGUMENT ............................................................. 9

IV.   ARGUMENT ..................................................................................... 10

V.    CONCLUSION.................................................................................. 22

## TABLE OF CITATIONS

<u>Cases</u>

Commonwealth v. Auker,
     681 A.2d 1305, 1319 (Pa. 1996)........................................................... 11

Commonwealth v. Balodis,
     747 A.2d 341, 343 (Pa. 2000)............................................................... 10

Commonwealth v. Bomar,
     826 A.2d 831, 856 (Pa. 2003)............................................................... 12

Commonwealth v. Brown,
     767 A.2d 576, 583 (Pa. Super. 2001)................................................... 13
     ..................................................................................................... 19-20

Commonwealth v. Cox,
     983 A.2d 666, 693 (Pa. 2009)............................................................... 11

Commonwealth v. Pierce,
     527 A.2d 973 (Pa. 1987)....................................................................... 18

Commonwealth v. Pierce,
     786 A.2d 203, 213 (Pa. 2001)........................................................... 10-11

Commonwealth v. Robinson,
     877 A.2d 433, 439 (Pa. 2005)............................................................... 11

Commonwealth v. Small,
    980 A.2d 549, 560-61 (Pa. 2009) ........................................................ 11-12

Commonwealth v. Taylor,
    933 A.2d 1035, 1040 (Pa. Super. 2007) ............................................... 10

Commonwealth v. Travaglia,
    661 A.2d 352, 357 (Pa. 1995) ............................................................. 11

Commonwealth v. Washington,
    927 A.2d 586, 599 (Pa. 2007) ............................................................. 11

Commonwealth v. Williams,
    640 A.2d 1251 (Pa. 1994) .................................................................... 18

Strickland v. Washington,
    466 U.S. 668, 697 (1984) .................................................................... 11

<u>Statutes</u>

42 Pa.C.S.A. §9543(a)(2)(ii) ......................................................................... 10, 19

42 Pa.C.S.A. §9545(d)(1) ............................................................................. 3, 4
    ................................................................................................................... 6, 13

<u>Miscellaneous</u>

Pa.R.A.P. 2111(a)(11), (d) ............................................................................ 8

I.

<u>COUNTER-STATEMENT OF THE QUESTION INVOLVED</u>

A.    WHETHER TRIAL COUNSEL PROVIDED INEFFECTIVE
      REPRESENTATION BY NOT CALLING WITNESSES
      AT TRIAL THAT WERE UNAVAILABLE AND/OR NOT
      BENEFICIAL TO APPELLANT LOVE'S DEFENSE?

(Suggested answer in the negative.)

II.

## COUNTER-STATEMENT OF THE CASE

This is an appeal from a denial of a petition filed pursuant to the Post Conviction Relief Act (hereinafter "PCRA"), 42 Pa.C.S.A. §9541, *et seq*. Appellant Tyshaunt Love contends that his trial counsel was ineffective for not calling certain witnesses at trial and/or investigating certain witnesses.

On September 20, 2005, Love was found guilty by a jury of Third Degree Murder in the death of Iris Fennell; the murder occurred in 1996. On October 28, 2005, the trial court sentenced Love to imprisonment for a term of 15 to 30 years, a fine totaling $2,000, and payment of the costs of the prosecution.

On May 8, 2007, this Court affirmed Love's judgment of sentence and on December 17, 2007, the Supreme Court of Pennsylvania denied Love's petition for allowance of appeal.

On February 24, 2009, Love filed a *pro se* PCRA petition. On March 30, 2009, Justin McShane, Esquire, was appointed by the trial court to assist Love in his PCRA efforts.

On April 29, 2009, appointed counsel filed a motion to withdraw alleging that Love's PCRA petition was untimely. On May 21, 2009, Love filed a *pro se* objection to the motion to withdraw claiming that his petition was timely filed. On July 2, 2009,

appointed counsel filed a motion to withdraw his previous motion to withdraw. On December 29, 2009, appointed counsel filed an amended PCRA petition.

On April 27, 2010, August 6, 2010, and November 4, 2010, the trial court conducted an evidentiary hearing concerning whether Love's trial attorneys, Paul Muller, Esquire, and Nathan Giunta, Esquire, were ineffective in their representation of Love. Specifically, the following relevant testimony was elicited at those hearings.

Kendra Smith testified as a witness for Love. The Commonwealth objected to her testimony pursuant to 42 Pa.C.S.A. §9545(d)(1), arguing that Love did not provide the required notice and information concerning her proposed testimony. The trial court overruled the objection. Smith testified that no one contacted her prior to Love's trial. She first testified that LaQuan "Kazar" Williams entered her house right after Iris Finnell was murdered. She stated he threw a jacket in a closet and left and police entered the house and eventually located the jacket; a bullet fell out of the jacket. She did not mention the bullet falling out of the jacket until her testimony at the August 6, 2010, PCRA hearing. Moreover, on cross-examination she struggled to recall if Williams' entry into her home occurred before or after September 2001, even though the Finnell murder occurred in late 1996. She admitted that she drank four beers before providing her 2001 statement to police; she was drinking just one hour before providing that statement. In that statement, Smith stated that Corey Alston kept a firearm inside her house during the time that Finell was murdered, and Williams stayed at Smith's house sometimes during that time period. She conceded that Williams was a scary

person and was in her house a couple days after the Iris Finnell homicide. Finally, she testified that (1) she was not sure if she would have been available at the time of trial to testify, and (2) she has a lengthy criminal history, including *crimen falsi* crimes such as retail theft and false identification to police. (Notes of Testimony of Evidentiary Hearing (herein after N.T.E.H.) dated August 6, 2010, at 65, 68, 70-73, 75-78, 80-81).

Next, Corey Alston testified at the evidentiary hearing. The Commonwealth objected to his testimony pursuant to 42 Pa.C.S.A. §9545(d)(1). The trial court overruled the objection. He was presented with his purported statement to police concerning the Iris Finnell murder. He did not recall the statement, but recognized his signature and testified that police asked him questions. The statement indicates Love asked Alston to provide him with an alibi. Alston admitted to signing the statement, although he might not have read it. Alston testified that he did not have a firearm at the time of the Finnell murder, contradicting his signed statement. He denied giving Williams a firearm. Alston is married to Kendra Smith and testified that he never told Ms. Smith that he gave Williams a firearm. Alston did not remember when Williams stayed at the Smith house in 1996. Alston did not want to be involved in the Love case as the case did not concern him. He testified that he did not know anything about the firearm, the shooter of Finnell, or the murder of Finnell. (N.T.E.H. dated August 6, 2008, at 85-86, 91-94, 98-99).

Thereafter, Williams testified at the evidentiary hearing. The Commonwealth objected to his testimony pursuant to 42 Pa.C.S.A. §9545(d)(1). The

trial court overruled the objection. Essentially, Williams provided unresponsive and uncooperative answers to Love's counsel's questions. Williams' memory of what happened from 1996 to 2000 was unclear concerning this case. Williams did not know if Muller came to speak with him. Williams pleaded the 5th Amendment and requested a lawyer during specific questions concerning Love's counsel's averment that he was involved in the Finnell murder. He testified that he would have invoked the 5th Amendment if he was called to testify at Love's trial. (N.T.E.H. dated August 6, 2010, at 103, 105-11 (largely uncooperative), 112-15).

      Muller testified at the August, 2010, hearing as well. He first explained his extensive training and experience as a public defender. He testified that his trial strategy was to implicate Williams as the killer of Iris Finnell. Specifically, his trial strategy was to expose that Finnell's blood was found on Williams' boot and that Finnell called and said someone was in her house other than Love during the incident. Muller stated that presenting Williams as a trial witness would have undercut his defense strategy because he could have pleaded the 5th Amendment at trial or explained why Ms. Finnell's blood was on his boot. Calling other witnesses to testify to what Williams told them about the Finnell murder would have presented hearsay hurdles. Muller stated that many potential witnesses were double-edged swords that provided beneficial and negative aspects to the case. In particular, Muller did not want any witnesses to testify that Love contacted them to provide him with an alibi as that would have been

damaging to Love's defense. (N.T.E.H. dated August 6, 2010, at 116, 122-23, 126, 133-34, 146-47, 152-53).

Muller's testimony continued at the hearing conducted on November 4, 2010. He testified to additional concerns about calling Williams as a witness. Williams could have implicated Love as Finnell's killer, or a viable possibility was that he could have testified that Love struck Finnell in a fight and that is why Finnell's blood was on his boot. Muller summarized that he used blood evidence to implicate Williams as Finnell's murderer. He used other witnesses to establish that Williams had a propensity of trying to strangle women. He did not call Carlos Hill as a witness because he could have pleaded the 5th Amendment, or contradicted his prior statements to police, which were themselves contradictory in nature concerning Williams's involvement in the crime. Muller testified that Kendra Smith and Corey Alston provided conflicting statements. Ultimately, Muller reiterated that these potential witnesses were all double-edged swords because they provided positive and negative qualities for Love' defense. Finally, Muller was concerned that essentially all these potential witnesses were ex-convicts and their credibility would thus be diminished with a jury. (N.T.E.H. dated November 4, 2010, at 18-19, 49, 53, 58, 60, 63-68, 70).

Carlos Hill testified at the hearing conducted on November 4, 2010. The Commonwealth objected to his testimony pursuant to 42 Pa.C.S.A. §9545(d)(1). The trial court overruled the objection. Essentially, Hill was an uncooperative witness throughout his testimony. His answers were generally "I don't recall" or "I plead the

5th." He did not recall any prior statements he made to police and he did not confirm the initials "CH" on a written statement to police meant "Carlos Hill." His most expressive testimony was describing his altercation with Williams in prison. He testified that he was not involved with the Finnell/Love case and he would not testify if Love had a trial. (N.T.E.H. dated November 4, 2010, at 80-94, 97-99).

On December 3, 2010, the Commonwealth filed a memorandum before the trial court. On December 6, 2010, Love filed a memorandum before the trial court.

On January 18, 2011, the trial court denied the PCRA petition. On February 16, 2011, Love filed a notice of appeal. On March 21, 2011, Love filed a timely Pa.R.A.P. 1925(b) Statement. On April 4, 2011, the trial court filed a Rule 1925(a) opinion. On June 27, 2011, this Court remanded the case to the trial court for the limited purpose of determining if Love's appointed counsel had abandoned him by not filing a brief to this Court. On June 29, 2011, Love filed a motion before this Court to reconsider that remand order. On July 1, 2011, the Commonwealth responded to Love's motion. On July 14, 2011, the trial court held a hearing with Love present and the trial court determined, with Love's assent, that appointed counsel remain as Love's counsel. On July 20, 2011, this Court denied Love's reconsideration motion as moot because of the trial court hearing and order of July 14, 2011. On September 27, 2011, Love filed his brief after receiving an extension of time to file his brief. The copy of Love's brief that the Commonwealth received did not have Love's Rule 1925(b)

Statement attached to it as required by Pa.R.A.P. 2111(a)(11), (d). This brief for the Commonwealth is filed in response to Love's brief.

III.

## SUMMARY OF ARGUMENT

First, Love failed to prove that Keith Herndon was available at the time of trial as a witness, was willing to cooperate, or what his testimony would have been. Herndon did not appear at the PCRA hearings; any claim concerning him is meritless.

Next, Love failed to comply with 42 Pa.C.S.A. §9545(d)(1) concerning notice of his PCRA hearing witnesses; thus, the trial court should not have considered the testimony from Smith, Alston, Williams and Hill.

Moreover, Smith, Alston, Williams and Hill were not all available to testify at trial and they would not have provided entirely beneficial testimony for Love. Smith was uncertain as to whether she could have testified at trial, she has *crimen falsi* convictions, her police statement was given after she engaged in significant drinking of alcohol and her story about the bullet was first disclosed at the PCRA hearing. Alston did not want to be involved in the case and denied having a firearm during the time of the 1996 murder, which contradicted Smith's account of the firearm. Williams and Hill were uncooperative and dismissive witnesses who did not want to testify and did not want to assist Love. Williams, in particular, would have been an adverse witness for Love as Love wanted to pin the murder of Iris Finnell on him.

Finally, Mr. Muller provided thorough reasons why these witnesses were not called at trial and/or more thoroughly investigated before trial.

ARGUMENT

A.   TRIAL COUNSEL WAS NOT INEFFECTIVE FOR
     NOT CALLING WITNESSES AT TRIAL THAT WERE
     UNAVAILABLE AND/OR NOT BENEFICIAL TO
     LOVE'S DEFENSE.

This Court's review of an order denying PCRA relief is limited to whether

the record supports the PCRA court's conclusion, and whether that decision is free of

legal error.  *Commonwealth v. Taylor*, 933 A.2d 1035, 1040 (Pa. Super. 2007).

When seeking relief under the PCRA on the basis of ineffective assistance

of counsel, a petitioner must plead and prove by a preponderance of the evidence that

his conviction resulted from "[i]neffective assistance of counsel which, in the

circumstances of the particular case, so undermined the truth-determining process that

no reliable adjudication of guilt or innocence could have taken place."  42 Pa.C.S.A.

§9543(a)(2)(ii).

The law presumes that counsel has rendered effective assistance.

*Commonwealth v. Balodis,* 747 A.2d 341, 343 (Pa. 2000).  Therefore, to succeed on a

claim that counsel was ineffective, an appellant must demonstrate that:  (1) the

underlying claim is of arguable merit; (2) counsel had no reasonable basis for the act or

omission in question; and (3) he suffered prejudice as a result of counsel's deficient

performance; *i.e.,* there is a reasonable probability that, but for counsel's error, the

outcome of the proceeding would have been different. *Commonwealth v. Pierce,* 786 A.2d 203, 213 (Pa. 2001); *Commonwealth v. Robinson*, 877 A.2d 433, 439 (Pa. 2005). Petitioner bears the burden of proving all three prongs and failure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two. *Id.* In addition, where an appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone. *Commonwealth v. Travaglia,* 661 A.2d 352, 357 (Pa. 1995) (citing *Strickland v. Washington,* 466 U.S. 668, 697 (1984)).

Here, Love has failed to carry the required burden outlined by the Pennsylvania Supreme Court in *Pierce*.

First, Love must show that his underlying claims are of arguable merit. Love argues that his trial attorneys were ineffective for failing to investigate and call several individuals as potential witnesses.

Love seems to argue that the failure to investigate and call these witnesses should amount to ineffective assistance of counsel *per se*. This is not the standard to be applied. *See Commonwealth v. Cox*, 983 A.2d 666, 693 (Pa. 2009); *Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007); *Commonwealth v. Auker*, 681 A.2d 1305, 1319 (Pa. 1996) (failure to call witness is not *per se* ineffective assistance of counsel as such decision generally involves trial strategy).

Additionally, one may always second guess trial strategy after the trial is over or offer speculation as to the outcome based on alleged errors or mistakes, but the

legal standard in not one of perfection. *See Commonwealth v. Small*, 980 A.2d 549, 560-61 (Pa. 2009).

To prevail on a claim of ineffectiveness for failure to call a witness, a petitioner must demonstrate that: "(1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the witness or should know of the witness's existence; (4) the witness was prepared to cooperate on the appellant's behalf; and (5) the absence of the testimony prejudiced appellant." *Commonwealth v. Bomar*, 826 A.2d 831, 856 (Pa. 2003).

Love has failed to carry his burden regarding the failure to call the complained of witnesses at trial.

First, Love failed to present any evidence that Keith Herndon was available at the time of trial, was willing to cooperate with the defense, or what his testimony would have been. Herndon did not appear at the PCRA evidentiary hearings conducted in this matter, and therefore any claims concerning Herndon should be denied as Love has failed to carry his burden pursuant to *Bomar*.

Additionally, Love has failed to establish that the alleged failure to interview Herndon amounted to ineffective assistance of counsel. The failure to have Herndon testify at the evidentiary hearing is the functional equivalent of abandoning this claim; because Love failed to establish that Herndon was available and willing to cooperate with the defense and what the substance of his testimony would have been at the time of the evidentiary hearing, he has failed to sustain his burden that the

alleged failure to interview Herndon amounted to ineffective assistance of counsel. This allegation is nothing more than a mere fishing expedition in hopes of finding some type of error which is improper under the PCRA. Moreover, Muller testified that Herndon was a "pathological liar" and had a *crimen falsi* record "longer than anyone I met." (N.T.E.H. dated November 4, 2010, at 58).

Therefore, Love has failed to establish that this claim concerning Herndon is of arguable merit and as such, they should be denied. In addition, because we do not have any substantive evidence of what his actual trial testimony would have been, Love has failed to show that he suffered any prejudice from the lack of Herndon's testimony. The record establishes that Love's trial attorneys were not ineffective concerning Herndon.

Next, Love presented the testimony of Kendra Smith at the August 6, 2010, evidentiary hearing. The Commonwealth objected to her testimony on the basis that Love had failed to comply with 42 Pa.C.S.A. §9545(d)(1). (N.T.E.H. dated August 6, 2010, at 65). There was no indication of what her testimony was going to be at the hearing regarding her availability and willingness to cooperate with Love's defense at trial or what her testimony would have been at trial. Love presented only a summary of her statement to the police as the basis for her testimony and also failed to provide the required information pursuant to §9545(d)(1). This is insufficient under the PCRA and as such her testimony should be stricken and not considered by this Court. *See Commonwealth v. Brown*, 767 A.2d 576, 583 (Pa. Super. 2001) (trial court properly

dismissed defendant's claims under PCRA without hearing based on failure to comply with 42 Pa.C.S.A. §9545(d)(1)).

If, however, this Court considers Ms. Smith's testimony, it falls well short of being able to sustain Love's ineffective assistance of counsel claim regarding her testimony.

First, Love failed to establish that Smith was available to testify for the defense at the time of the original trial. Smith admitted that she was not aware of when the trial occurred and that she may not have been available at the time of trial. (N.T.E.H. dated August 6, 2010, at 73). Furthermore, Love cannot establish that he was prejudiced by the failure to call Smith as a witness.

During the hearing, Smith admitted that she had been drinking prior to giving her statement to the police, and she testified that she had prior convictions for retail theft and false reports to law enforcement. This makes her potential trial testimony very suspect. In addition, her story of finding a bullet in Williams' jacket was presented for the first time during the evidentiary hearing. That goes a long way in showing that her credibility as a witness should be questioned. Moreover, on cross-examination, she struggled to recall if Williams' entry into her home with the jacket that allegedly contained the bullet occurred before or after September 2001, even though the Finnell murder occurred in late 1996. In short, Ms. Smith was not a credible witness. (N.T.E.H. dated August 6, 2010, at 65, 68, 70-73, 75-78, 80-81).

Moreover, if Smith's testimony had been presented to the jury it would not have altered the verdict based upon her numerous credibility issues as a potential witness.

Additionally, the part of her statement to the police that the defense would have wanted to admit into evidence concerning what Corey Alston had told her regarding Williams and his firearm was inadmissible hearsay. Therefore, had the defense called her to testify most of her statement would have never been heard by the jury because it was inadmissible hearsay. Thus, Love cannot establish any prejudice from her not being called to testify at his trial. (N.T.E.H. dated August 6, 2010, at 152-53). Finally, her statement to the police was in direct conflict with the testimony of Alston, who was another potential defense witness. (N.T.E.H. dated August 6, 2010, at 66-67).

Next, Love presented the testimony of Alston. Once again, his testimony should be barred from consideration due to Love's failure to comply with 42 Pa.C.S.A. §9545(d)(1). Alston was never listed as a witness in any of the PCRA filings. He was merely mentioned in reference to Smith's testimony. Therefore, his testimony is inadmissible. (See N.T.E.H. dated August 6, 2010, at 85-86 (Commonwealth objection at evidentiary hearing)).

If however, this Court considers the testimony presented by Alston, it does not support any of Love's ineffectiveness claims.

Alston testified that he did not have a firearm at the time of the Finnell murder, nor did he give a firearm to Williams, nor did he tell Ms. Smith that he gave Williams a firearm. (N.T.E.H. dated August 6, 2010 at 93-94). This statement conflicts with Smith's testimony and some of Alston's statement to police and obviously would not be beneficial to the defense if elicited. In fact, Alston's testimony and statement to the police concerning Love's insisting that Alston help him obtain an alibi would go a long way in undermining the defense's case.

Furthermore, Love failed to establish that Alston would have testified for the defense in a favorable way. Alston stated that he did not know anything about firearms or a shooter or a murder and did not want to be involved in the case. (N.T.E.H. dated August 6, 2010 at 98-99). The testimony offered by Alston would have gone far in undermining the defense's theory of the case that Williams had committed the murder and also would have made Love look guilty by his attempts at setting up a possible alibi defense. Thus, Love has failed to show that he suffered any prejudice as a result of Alston's failure to testify.

Next, Love complains that his attorneys were ineffective for failing to interview and call Carlos Hill as a potential witness. Once again, Love failed to satisfy the requirements of 42 Pa.C.S.A. §9545(d)(1) and as such, any issue regarding Hill should not be considered by this Court. (N.T.E.H. dated August 6, 2010, at 80-81 (Commonwealth objection at evidentiary hearing)).

Additionally, Love has also failed to establish that Hill would have participated as a witness for the defense at trial. In fact, his testimony was that, had the defense attorneys contacted him, he would not have testified. (N.T.E.H. dated November 4, 2010, at 99). Throughout his entire testimony during the evidentiary hearing it was made clear that Hill would have been a horrible witness for the defense and therefore, his attorneys cannot be found to be ineffective based on the alleged failure to interview and present this witness because he clearly would not have helped the defense. (N.T.E.H. dated August 6, 2010, at 80-99). Thus, Love cannot establish any prejudice from not having Hill testify.

Finally, Love complains that his trial attorneys were ineffective for failing to interview and call Williams as a potential defense witness. Once again, Love failed to satisfy the requirements of 42 Pa.C.S.A. §9545(d)(1) and as such, any issue regarding Williams should not be considered by this Court. (N.T.E.H. dated August 6, 2010, at 103 (Commonwealth objection at evidentiary hearing)). Here, Love has failed to carry his burden regarding this claim.

First, Love failed to establish that Williams was available to testify. During the evidentiary hearing, it was established that Williams was incarcerated in New York at the time of trial. Love complains that his trial attorneys should have had him brought to Pennsylvania to testify. However, he has failed to show that New York would have released him to Dauphin County for trial purposes even if he had been requested.

Furthermore, Love's trial attorneys testified that, even if Williams had been available, they would not have called him as a witness. Love has failed to show that the decision not to call this witness was an unreasonable trial tactic. In fact, the evidence presented established that his attorneys had a valid reasonable basis for not calling Williams to testify.

To satisfy this prong of the test, Love must prove that counsel's strategic decision was so unreasonable that no competent lawyer would have chosen it or that the alternatives not chosen offered a potential for success substantially greater than the tactics utilized. *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987).

With respect to whether counsel's acts or omissions were reasonable, defense counsel is accorded broad discretion to determine tactics and strategy. The test is not whether other alternatives were more reasonable but whether counsel's decision had any reasonable basis to advance the interests of the defendant. *Commonwealth v. Williams*, 640 A.2d 1251 (Pa. 1994).

Here, both of his attorneys testified that Williams was unavailable for trial because he was being held on charges from New York. (N.T.E.H. dated April 27, 2010 at 205; N.T.E.H. dated August 6, 2010, at 125-126). In addition, they testified that even if Williams would have been available that they would not have called him as a witness based on their fears that he would implicate Love and that it was a better strategy to accuse him of the murder based on the evidence presented and not afford him the opportunity to explain away the blood evidence located on his boot. (N.T.E.H. dated

April 27, 2010, at 205; N.T.E.H. dated August 6, 2010, at 18-19; N.T.E.H. dated
November 4, 2010, at 65-66, 126, 146-47). With respect to Williams, the actions of not
calling him to testify by trial counsel were reasonable to advance the interests of Love at
the time of trial and did not amount to ineffective assistance of counsel. Additionally,
these determinations were validated by Williams' testimony during the evidentiary
hearing. His testimony and hostility toward Love clearly established that he would not
have been a cooperative defense witness. Williams would not have animadverted
about Love at a trial. (N.T.E.H. dated August 6, 2010, at 105-15).

Finally, Love's ineffectiveness arguments concerning Williams are purely
about individual strategic choices. Love's PCRA attorney and trial counsel agreed on
the main defense theory—implicate Williams as the killer. However, Love's only
arguments about Williams deal with the trial attorneys' strategy in presenting that theory
to the jury. Consequently, Love has failed to establish ineffectiveness in this regard
based on *Pierce* and *Williams*.[1]

None of the claims presented by Love "so undermined the truth-
determining process that no reliable adjudication of guilt or innocence could have taken
place". 42 Pa.C.S.A. §9543(a)(2)(ii). Love did not comply with 42 Pa.C.S.A.

---

[1]  Although Love raised other ineffective claims based on not seeking additional DNA testing of
Williams' clothing, independent testing of a hand impression on Finnell's body, independent
testing of a dental bite mark, and not objecting to the trial court's ruling about the admissibility of
Williams' prior bad acts if he testified, Love has not raised those issues in this appeal.
Accordingly, they are not preserved for appellate review. Love's Argument section only raises
ineffectiveness claims related to Herndon, Smith, Alston, Williams and Hill.

§9545(d)(1) regarding Smith, Alston, Williams and Hill; thus, the trial court erred in considering their testimony at the evidentiary hearing(s). *See Brown*, 767 A.2d at 583 (trial court properly dismissed defendant's claims under PCRA without hearing based on failure to comply with 42 Pa.C.S.A. §9545(d)(1)). On the merits, Muller thoroughly explained his strategic choices in relation to each of Love's ineffectiveness claims. Muller stated it the best in commenting that "almost every witness and evidence turned out to be a double-edged sword. Every person for something good, there was something equally as bad that would come out." (N.T.E.H. dated August 6, 2010 at 153-154). Essentially, Muller chose not to call multiple ex-convicts (and/or current convicts) as witnesses that may not have been available to testify and/or were just as potentially harmful to Love's defense as helpful to his defense. Muller could have called Williams, Smith, Alston, and Hill as witnesses at trial, and the following could have occurred: (1) Williams incriminated Love; (2) Smith's credibility was damaged by her *crimen falsi* and significant drinking before her statement to police; (3) Alston's testimony conflicted with Smith's testimony concerning providing Williams with a firearm; and (4) Hill was significantly uncooperative and dismissive at trial. If trial counsel chose that strategy at trial, we likely would be at the same stage we are now - on appeal from the denial of Love's PCRA petition. However, Love's counsel would likely be arguing that Muller was ineffective for calling those witnesses.

In the end, none of the evidence or testimony that Love complains should have been presented would have changed the outcome of the case, because nothing

he offered in his PCRA petition would have changed the fact that at trial the testimony

from the eyewitness to the murder proved beyond a reasonable doubt that Love was the

one that possessed the firearm and shot and murdered, Iris Fennell.[2]

---

[2]   Much of this Argument section parallels the Commonwealth's memorandum of December 3, 2010, which was filed after the third and final evidentiary hearing concluded.

V.

CONCLUSION

WHEREFORE, the Commonwealth respectfully requests that this

Honorable Court affirm the order of the Dauphin County Court of Common Pleas.

Respectfully submitted,

Christopher J. Schmidt
Deputy District Attorney

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving the foregoing document(s) upon

the persons and in the manner indicated below, which service satisfies the requirements

of Pa.R.A.P. 121:

**Service by first class mail addressed as follows:**

Joshua Auriemma, Esquire
4807 Jonestown Road, Suite 148
Harrisburg, PA 17109
(717) 657-3900

Christopher J. Schmidt
Deputy District Attorney
Dauphin County Court House
Front and Market Streets
Harrisburg, PA 17101
(717) 780-6767

Dated: October 27, 2011