**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TYSHAUNT LOVE, | |
| Appellant | No. 339 MDA 2011 |

Appeal from the PCRA Order entered January 18, 2011
in the Court of Common Pleas of Dauphin County Criminal Division
at No. CP-22-CR-0000937-2002

BEFORE: PANELLA, MUNDY, AND FITZGERALD,* J.J.

MEMORANDUM BY MUNDY, J.:                    FILED: January 10, 2012

Appellant, Tyshaunt Love, appeals from the January 18, 2011 order

denying his petition filed pursuant to the Post Conviction Relief Act (PCRA),

42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

The relevant facts and procedural history, as summarized by the PCRA

court, are as follows.

> On September 20, 2005, [Appellant] was
> convicted by [a] jury of 3rd degree murder of Iris
> Fennel and on September 28, 2005, he was
> sentenced to a term of incarceration of not less than
> fifteen nor more than thirty years. [Appellant's]
> post-sentence motion was denied on December 28,
> 2005, the Superior Court affirmed the sentence on
> May 8, 2007, and on January 16, 2009, [our]
> Supreme Court denied [Appellant's] Petition for
> Allowance of Appeal. [Appellant] filed a timely pro
> se PCRA petition on February 24, 2009. Attorney

---

*Former Justice specially assigned to the Superior Court.

> Justin McShane was appointed to represent [Appellant] on March 30, 2009, and counsel filed an Amended PCRA Petition on December 29, 2009. On April 14, 2010, counsel was permitted leave to further amend his PCRA Petition to include additional issues.

PCRA Court Opinion, 1/18/10, at 1-2; Certified Record (C.R.) at 139.

On April 27, 2010, August 6, 2010, and November 4, 2010, the PCRA court held a three-part hearing on Appellant's PCRA petition. C.R. at 150, 151, 152. Thereafter, on January 18, 2011, by opinion and order, the PCRA court denied Appellant's petition. C.R. at 139. On February 16, 2011, Appellant filed this timely appeal.[1]

On appeal, Appellant raises the following issues for our review.

> 1. Trial counsel's failure to call exculpatory witnesses at trial, unless the decision is made pursuant to a reasonable strategic decision, generally constitutes ineffective assistance. Trial counsel failed to call the alternative suspect, two witnesses who gave statements indicating that the alternative suspect had confessed to the murder, a witness with whom the alternative suspect was living who gave a statement to the police that the witness owned a gun, and a witness who gave a statement to police that the alternative suspect came into her house following the murder and retrieved a jacket from her closet—and subsequently testified at the PCRA hearing that a bullet fell out of the jacket. Was trial counsel ineffective?

> 2. Trial counsel has a duty to interview witnesses, particularly eyewitnesses, and failure to do so generally constitutes *per se* unreasonableness. Trial

---

[1] Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

> counsel failed to interview an alleged eyewitness to the crime, and that eyewitness was also [Appellant's] alternate suspect and the entire basis for [Appellant's] theory of the case. Trial counsel also failed to interview various other exculpatory witnesses. Was trial counsel ineffective?

Appellant's Brief at 1.[2]

Our standard when reviewing a denial of a PCRA petition is limited to the determination of whether the PCRA court's findings are supported by the record and whether the order is free of legal error. **Commonwealth v. Reaves**, 923 A.2d 1119, 1124 (Pa. 2007), *appeal denied*, 959 A.2d 929 (Pa. 2008). "Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." **Commonwealth v. Boyd**, 923 A.2d 513, 515 (Pa. Super. 2007), *appeal denied*, 923 A.2d 74 (Pa. 2007). In order to be eligible for PCRA relief, a defendant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2).

Additionally, in reviewing ineffective assistance of counsel claims we are guided by the following standard.

---

[2] The argument section of Appellant's brief contains a slightly altered version of these arguments. Specifically, in issue one Appellant focuses on whether counsel was ineffective for failing to call four witnesses at trial, and in issue two Appellant focuses on whether counsel was ineffective for failing to interview and call to the stand an alternative suspect. For purposes of our review, we have elected to address Appellant's issues as they appear in the argument section of his brief.

When considering an allegation of ineffective assistance of counsel, counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) Appellant was prejudiced by counsel's action or omission. ***Commonwealth v. Pierce***, 515 Pa. 153, 158-59, 527 A.2d 973, 975-76 (1987). To demonstrate prejudice, an appellant must prove that a reasonable probability of acquittal existed but for the action or omission of trial counsel. ***Commonwealth v. Tainan***, 734 A.2d 886, 889 (Pa. Super. 1999). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. ***Commonwealth v. Williams***, 581 Pa. 57, 70, 863 A.2d 505, 513 (2004) (quoting ***Commonwealth v. Rush***, 576 Pa. 3, 838 A.2d 651, 656 (2003)). Further, "[a] PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness." ***Commonwealth v. Natividad***, 595 Pa. 188, 209, 938 A.2d 310, 322-23 (2007).

***Commonwealth v. Perry***, 959 A.2d 932, 936 (Pa. Super. 2008).

In Appellant's first issue, he avers trial counsel was ineffective for failing to call certain witnesses, and that this inaction constitutes *per se* unreasonableness. Appellant's Brief at 13. Specifically, Appellant avers trial counsel was ineffective for failing to call Kendra Smith, Cory Alston, Keith Herndon, and Carlos Hill. *Id.* at 15-17. Appellant maintains that testimony provided by these witnesses "would reasonably have led to a different verdict, and failure to present this evidence at trial was so prejudicial as to deprive [Appellant] of a fair trial." *Id.* at 19.

In support of this averment, Appellant references the following five-part test set forth in **Commonwealth v. Henry**, 706 A.2d 313 (Pa. 1997).

> In order to establish that counsel was ineffective for failing to call a witness, a defendant must show, in addition to meeting the general standard for an ineffectiveness claim, the following elements: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness' testimony was so prejudicial as to have denied the defendant a fair trial.

**Id.** at 329 (citations omitted). Additionally, Appellant cites to our Supreme Court's decision in **Commonwealth v. Johnson**, 966 A.2d 523 (Pa. 2009), for the proposition "that satisfaction of the[] five [**Henry**] elements also satisfies both the performance [and] the prejudice prongs" of ineffective assistance of counsel. Appellant's Brief at 15.

On the contrary, a careful reading of **Johnson** belies this assertion. The **Johnson** Court held "*per se* failing as to performance, of course, does not make out a case of prejudice, or overall entitlement to **Strickland** relief." **Johnson**, **supra** at 536. "To demonstrate **Strickland** prejudice, the PCRA petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." **Id.** (quotation marks and citations omitted).

In the instant matter, Appellant concedes this Court could conclude "that failure to call any one of the witnesses was not so prejudicial as to

deprive [Appellant] of a fair trial[,]" but that an "examination of the totality of the circumstances together paints a clear picture of clear prejudice sufficient to deprive [Appellant] of a fair trial." Appellant's Brief at 18-19. Despite this averment, the law in this Commonwealth does not ask us to examine the totality of the circumstances, but instead requires we look to each individual witness. *See Henry, supra* at 329.

We turn now to the four witnesses Appellant asserts counsel was ineffective for failing to call, Kendra Smith, Cory Alston, Keith Herndon, and Carlos Hill. At the PCRA hearings on April 27, 2010, August 6, 2010, and November 4, 2010, testimony was taken from each of these witnesses, except Keith Herndon, and from Appellant's trial counsel Paul Muller, Esquire (Attorney Muller). C.R. at 150-152. After hearing all of the testimony, the PCRA court determined Appellant was not entitled to relief for the following reasons.

> Kendra Smith testified at the August 6, 2010 PCRA hearing that she may not have been available to testify at [Appellant]'s trial, and Attorney Muller testified that he questioned the reliability of her statements to police as she admitted to drinking a few beers prior to providing her statement to police. [Appellant] alleged that at trial she would have testified that LaQuan[3] borrowed a gun belonging to Cory Alston and that the gun was returned with blood on it. During the PCRA hearing, Ms. Smith stated that LaQuan ran into her house sometime

---

3 LaQuan Williams, also known as "Kazar," is the alternate suspect in this case. Appellant's second issue addresses his claim that trial counsel was ineffective for failing to interview Kazar.

6

after Iris Fennel was killed, threw a jacket into her closet, and that a bullet fell out of the jacket. This was the first time she discussed the jacket and the bullet on the record. Attorney Muller testified that he did not call Ms. Smith to testify during [Appellant]'s trial because at the time Ms. Smith was stating that the dates did not match up, so she would not have been a good alibi witness for [Appellant a]nd her testimony appeared to lack credibility.

Attorney Muller also testified that he could not locate Keith Herndon, who allegedly claimed LaQuan had admitted to killing Iris. He also said he knew Mr. Herndon was not a credible witness as he had a long history of *crimen falsi* charges and he was a pathological liar. Keith Herndon and Carlos Hill were both cellmates of LaQuan at different times and their alleged testimony was that LaQuan admitted to each of them that he killed Iris. This testimony could have raised hearsay issues if presented during trial. **See** Pa.R.E. 804(b)(3) ("In a criminal case, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.") Carlos Hill changed his original story in a later interview and would have faced credibility questions as well.

PCRA Court Opinion, 1/18/10, at 5-6.

Additionally, at the PCRA hearing Attorney Muller testified on direct examination to the following trial strategy in choosing not to call the aforementioned witnesses.

Those witnesses would have been evidentiary problems pursuant to hearsay, whether it was considered a statement or admission and requirements necessary as to his availability versus unavailability and corroboration and trustworthiness and those issues were all considered as to how to get that in and whether to bring it in.

The problem in this case was almost every witness and evidence turned out to be a double edged sword. Every person for something good, there was something equally bad that would come out. It became a balancing act or argument what happened, what occurred to what we wanted in and what we wanted to keep in and out.

What we wanted in was the blood on Kazar from the victim. What we wanted in was the whole situation, the phone call [the victim] made to Ms. Johnson that evening saying there was someone there; and coming out, that it wasn't [Appellant]. The fact that she had – she had chicken in the oven [that] was cooking.

By the time they got to the scene and found her body, that smoke that was pouring out of the apartment and there was an argument as to how long that would have taken and when that occurred and how it had to be someone other than [Appellant]. Those were the kind of issues we were approaching, trying to get out at that time.

We didn't want, you know, whether it was Corey Alston or Carlos Hill, whichever one, probably Mr. Alston testifying [], saying that [Appellant] had given him, come to him and asked him to give him an alibi as part of his statement to the police. I had contact with [Appellant], wanted me to give an alibi for this night and also him saying that Kazar was with him at their house with Ms. Smith on the 20th and 21st.

Those are the kind of things I'm talking about as to, yea, could we call them and get them in, probably. Would we want to and bring that out when our argument is Kazar was there, the blood is on him. We don't want that coming out. It was a judgment call.

N.T., 8/6/10, at 153-154.

Attorney Muller's testimony demonstrates his trial strategy focused on creating doubt in the jurors' minds, and admitting into evidence anything that would lead the jury to conclude Kazar may have been responsible for the death of the victim. In furtherance of this strategy, Attorney Muller made "a judgment call" as to which witnesses should testify. Specifically, in regards to Kendra Smith, Cory Alston, Keith Herndon, and Carlos Hill, Attorney Muller felt that each of these witnesses could have given testimony that would have undermined his strategy. We will not second-guess trial counsel's strategy as "[a]n evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight." *Commonwealth v. Rolan*, 964 A.2d 398, 406 (Pa. Super. 2008). Because there was a reasonable basis for counsel's decision, we conclude that Appellant is entitled to no relief. *See Perry*, *supra* at 936 (holding "[a] claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs") (citation omitted). Accordingly, because counsel has satisfied the reasonable basis prong of the test for ineffective assistance of counsel, we conclude Appellant's first claim is without merit.[4]

---

[4] Additionally, we need not reach the merits of the five-part test set forth by our Supreme Court in **Henry**, as it clearly holds the test need only be met "in addition to meeting the general standard for an ineffectiveness claim[.]" **Henry**, *supra* at 329. As Appellant's issue has failed to meet the general standard for ineffective assistance of counsel, no further review is warranted.

J. S69024/11

In his second issue, Appellant avers trial counsel was ineffective for failing to interview an alleged alternative suspect to the crime. Appellant's Brief at 20. Specifically, Appellant avers Kazar murdered the victim, and that "Guillermina Cruz alleged to have seen 'Kazar' at the scene of the murder." *Id.* at 25. He further asserts, "[t]rial counsel had absolutely nothing to lose by seeking to interview 'Kazar.'" *Id.*

Similar to the test set forth above for reviewing ineffective assistance of counsel claims involving an alleged failure to call certain witnesses, a claim of ineffective assistance for failing to interview witnesses must also satisfy the general ineffective assistance of counsel standard. Specifically, our Supreme Court has consistently held the following standard to apply.

> Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. Counsel's unreasonable failure to prepare for trial is an abdication of the minimum performance required of defense counsel. The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance. Recently summarizing cases in *Commonwealth v. Dennis*, 597 Pa. 159, 950 A.2d 945 (2008), this Court stated that:
>
> > These cases ... arguably stand for the proposition that, at least where there is a limited amount of evidence of guilt, it is *per se* unreasonable not to attempt to investigate and interview known eyewitnesses in connection with defenses that hinge on the credibility of other witnesses. They do not stand, however,

> for the proposition that such an omission is *per se* prejudicial.
>
> **Id.** at 960[.] Indeed, such a *per se* failing as to performance, of course, does not make out a case of prejudice, or overall entitlement to **Strickland** relief.

**Johnson**, **supra** at 535-536 (quotation marks and some citations omitted).

At the August 6, 2010 PCRA hearing, Appellant's PCRA counsel questioned Attorney Muller on his decision not to interview Kazar. Specifically, Appellant's PCRA counsel asked Attorney Muller why he did not have Kazar brought down from New York where he was incarcerated to be interviewed. Attorney Muller responded as follows.

> Kazar was the plan B suspect. He was the one it was always being pinned on. Kazar was the killer in this case.
>
> One of the things for that was the blood on his boot. The victim's, Iris, blood was on Kazar's Timberland boots. Kazar, in one of his statements to police, gave an explanation as to why that blood was on his boot, being that he had been in the house with [Appellant] and Iris at some point, whether it was that day or the day before, whatever, and [Appellant] got into an argument with Iris, slapped her around and hit her and she was bleeding and that's how the blood got there.
>
> Excuse me. That's my explanation. I didn't want Kazar here. That would have undercut our entire defense if that came in.

N.T., 8/6/10, at 125-126.

Further, on cross-examination the following colloquy took place.

> [Q] So in regards to that, it's alleged that you were ineffective for not calling LaQuan Williams. We've

> gone through this several times over the course of
> the hearing. I believe you basically said regardless
> of whether he was available or not, you were not
> calling Kazar as a witness; is that correct?
>
> [A] That's correct.
>
> [Q] And, again, what's the main purpose for not
> calling him as a witness regardless of whether he's
> available or not?

> [A] I guess it was two-fold, not wanting to create
> his unavailability one way or the other but also not
> wanting him to actually show up – okay – and tell
> the jury that the reason her blood was on his boot
> was because [Appellant] had gotten into a physical
> fight with the victim earlier. I don't recall if it was
> that day or the day before, whatever the case may
> be, and in breaking them up, that [Appellant] had
> punched her in the face and she was bleeding and
> the blood from her got on him at that point.

N.T., 11/4/10, at 64-65.

Finally, Attorney Muller expressed his concern that once Kazar found

out the defense theory was that he murdered the victim, he would invoke his

Fifth Amendment right against self-incrimination. *Id.* at 11. As the trial

court noted in its Rule 1925(a) opinion,

> Attorney Muller did not call LaQuan to testify for the
> defense because LaQuan would have invoked his 5th
> Amendment immunity against self-incrimination had
> he been called to testify for or against [Appellant].
> He did, indeed, when called by PCRA counsel to
> testify at the PCRA hearing.

PCRA Court Opinion, 1/18/10, at 5.

As previously stated, Attorney Muller's trial strategy involved trying to

convince the jury that Kazar may have killed the victim instead of Appellant.

Based on the information contained in the police reports, the physical evidence, and statements from other witnesses, Attorney Muller made the decision not to interview a witness he knew he could not call at trial. This Court fails to see how this decision prejudiced Appellant to the point "that a reasonable probability of acquittal existed but for the action or omission of trial counsel." ***Perry, supra*** at 936 (citation omitted). Therefore, we conclude Appellant has failed to meet the prejudice prong of the ineffective assistance of counsel test, and as a result Appellant's issue fails.

Based on the foregoing, we conclude the PCRA court did not err in denying Appellant's PCRA petition. Therefore, we affirm the PCRA court's January 18, 2011 order.

Order affirmed.

Judgment Entered.

Deputy Prothonotary

Date: __January 10, 2012__