# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYSHAUNT LOVE,** | : | **Civil No. 1:13-CV-456** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MARIROSA LAMAS, et al.,** | : | |
| | : | |
| **Respondents** | : | |

## REPORT AND RECOMMENDATION

## I.     INTRODUCTION

Tyshaunt Love is an inmate in the custody of the Pennsylvania Department of Corrections, serving a 15-30 year sentence that was imposed after he was convicted of killing his girlfriend, Iris Fennell, in Harrisburg, Pennsylvania in the winter of 1996.   Since being convicted, Love has sporadically endeavored to challenge his conviction and resulting sentence on direct review and through collateral challenges, all of which have proven unsuccessful.   In 2013, Love continued these erratic efforts to secure post-conviction relief by initiating the instant action with a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

An initial problem with Love's latest petition for habeas relief is that it was filed well past the one-year statute of limitations that is prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA), 104 P.L. 132, 110 Stat. 1214, 28 U.S.C. §§ 2244(d)(1)(A).   Recognizing this potentially dispositive challenge to his belated petition, Love has characterized his petition as making a claim of actual innocence to Fennell's murder, thereby bringing his petition within one of the narrow exceptions to the one-year statute of limitations that would ordinarily apply. *See McQuiggins v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1928 (2013) ("Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, or . . . expiration of the statute of limitations.").   As will be discussed below, however, "tenable actual-innocence claims are rare[.]" *Id.*

The Court directed the respondent to respond specifically to Love's claim of actual innocence and the showing that he attempted to make in support of that claim, so that a determination could be made as to whether Love's petition is time-barred or if the Court would be permitted under AEDPA to reach the merits of his claims for relief.   We have reviewed the parties' submissions on this dispositive issue in this case, and conclude that Love has fallen far short of what is required to put forth a "tenable actual-innocence claim." *Id.*   Accordingly, it will be recommended that the Court find that Love's petition is barred by the one-year

statute of limitations prescribed by AEDPA, and dismiss the petition without issuing a certificate of merit.

## II.    BACKGROUND

### A.    The Murder of Iris Fennell

In 1996, Iris Fennell was in a romantic relationship with Tyshaunt Love. (Notes of Testimony of Jury Trial, Volume II, dated September 14-15, 2005, at 357.) [1]  The couple was involved in the Harrisburg drug trade, with Love going by the alias "Cuzzo" or "Schoolboy" and Fennell being called "Blondie" because she dyed her hair blonde.  (N.T. II 356-58.)  Fennell worked with a group of women who trafficked drugs and worked at or near a bar called Fav's.  (*Id.* at 355-57.) Fennell and her crew associated with men, like Love, who had relocated from New York City to the Market Street area of Harrisburg.  (*Id.*)  Fennell was reputed to be one of the best "hustlers" in the area, and was considered to be a better drug dealer than Love.  (*Id.* at 361-62.)

The relationship between Love and Fennell was apparently close but also tempestuous, fraught with tension and marked by jealousy.  (N.T.II 267-69, 278, 328-29, 344, 363.)  Testimony at trial revealed that on one occasion, Love punched

---

[1] Love was tried in the Dauphin County Court of Common Pleas over the course of nine days, from September 12 through September 20, 2005.  The notes of testimony are voluminous and have been filed by the Commonwealth as exhibits at Document 25.  The notes of testimony shall be cited as "N.T." and broken into three volumes, as "N.T.I", dated September 12-13, 2005, "N.T.II", dated September 14-15, 2005, and "N.T.III", dated September 16, 19-20, 2005.

out the window of a car after seeing Fennell speak to another man.  (N.T.II 268.)

At that time, Love told people that if he could not have Fennell, then no one else

would either.  (*Id.*)  In late 1996, however, Fennell had apparently had enough and

had indicated that she was going to have Love leave her home, where he had been

living.  (N.T.II 296-97; N.T.III at 174.)

The trial testimony reveals that late on December 19, 1996, Fennell had been

seen at Fav's where she told one of her friends that Love was getting on her nerves

and that she was going home for the night.  (N.T.II 364-65.)   When Love

approached the two, Fennell  left.  (*Id.* at 365.)  What ensued, according to the

testimony and as Love represents in his petition for relief, is that Love repeatedly

attempted throughout the night to find out where Fennell was, but was

unsuccessful.   Unable to find Fennell, Love contacted another female friend,

Guillermina Cruz, who was also known as "Tootie" or "Toothie".  (N.T.III 149,

161-62.)  The two made plans to spend some time together that night, and did so at

the home of a person that Love referred to as his uncle, where the two watched

movies together and spent the night on a couch in the home.  (N.T.III 162-63.)

The next morning, Cruz and Love went to Fennell's house.  At the home Fennell

and Love proceeded to get into a heated argument in the kitchen, where Fennell

was cooking food that was to be used as part of a festive Latin or Puerto Rican

holiday meal that Fennell was helping to make with another friend.  Fennell and

her friend were to meet the following day to spend some time shopping for Christmas gifts for Fennell's daughter.

The two women would never meet for that shopping trip because Fennell was shot to death in her home on the morning of December 20, 1996. An autopsy revealed that Fennell had been shot twice in the face, once in the right jaw and one time in her lip. Her face had been badly beaten, as shown from bruising, swelling and abrasions all over her face, which were so deep that they went into the fat beneath her face. (N.T.II 75-79.)

Cruz was a witness to this killing. According to the trial testimony, Cruz accompanied Love to Fennell's house on December 20, where they encountered Fennell cooking at the stove. Love and Fennell apparently got into a heated argument, into which Cruz was drawn. The argument turned physical, with Cruz slapping Fennell and then Love punching her in the face and dragging her into the kitchen where he took out a gun. (N.T.III 166-68, 185-86.) Love then proceeded to drag Feller up the stairs while Cruz remained in the kitchen. (*Id.* at 168, 191.) Cruz testified that she heard the argument continue, and then heard a gunshot and a thump coming from the bedroom. Cruz ran up the stairs where she saw Love holding a gun and shooting in the direction of the floor. She also saw another

individual, LaQun "Kazar" Williams leave the room and run out of the house.[2]
(N.T.III 168-169, 170, 191-92.)

### B.    Love's Prosecution and Conviction

The Commonwealth investigated both Love and Williams as suspects in the
murder, eventually charging Love with the killing on December 28, 1996.  Due to
a number of complicating factors involving Cruz's testimony at a preliminary
hearing, allegations of obstruction on the part of Cruz and her boyfriend at the

---

[2]  It is not entirely clear why Williams was in the home, or whether he was staying
there at the time.  The record reveals that Williams is a violent individual who was
implicated in a particularly brutal and violent rape of Vanessa Ames in Harrisburg
approximately one year before Fennell was killed.  In the instant petition, Love
argues that it was Williams who actually killed Fennell, asserting that the facts of
the earlier rape and the assault and murder of Fennell bear compelling similarity.
This was, in fact, an issue that was thoroughly addressed in the state proceedings,
since Love argued that the trial court committed error by excluding evidence
relating to the prior rape and attempted murder by a theoretical alternative suspect
(Williams).  The trial court excluded this evidence after hearing from Corporal
George Cronin of the Criminal Investigation Assessment Office of the
Pennsylvania State Police, who testified that there were substantial differences
between the two crime scenes, causing the trial court to conclude that the probative
value provided by the evidence of the earlier rape was outweighed by the potential
for prejudice.  Love had argued at trial that the evidence should have been admitted
as evidence of the identity of the perpetrator, although he conceded that under
Pennsylvania law the acts being compared must be similar enough to show the
"signature" of the perpetrator. *See Commonwealth v. Frank*, 577 A.2d 609, 614
(Pa. Super. Ct. 1990).  The trial court concluded that the rape of Vanessa Ames and
the assault and murder of Iris Fennell were too dissimilar to permit the introduction
of this evidence – something Love seeks to have this Court revisit in his untimely
petition for federal habeas relief on the grounds that it constitutes new evidence.
As will be explained further, we find that it does not qualify as new evidence, and
as such is insufficient to allow the Court to find an exception to the one-year
statute of limitations governing Love's petition for habeas corpus.

time, and a number of potential conflicts of interest in the Public Defender's Office's representation of Cruz, Williams and Love – all of which are far beyond the scope of the relevant issues in the instant petition for habeas relief -- the Commonwealth *nolle prossed* the charges against Love at that time.

In 2001, the Commonwealth reinvestigated Fennell's murder, this time submitting the matter to an investigating grand jury, which indicted Love for homicide.  The case was the subject of some extended procedural delays, but eventually went to trial in the fall of 2005.  At the conclusion of that trial, a jury convicted Love of third-degree murder, and on October 28, 2005, the Dauphin County Court of Common Pleas sentenced him to 15-30 years in prison.  (Doc. 10, Ex. A, at 15, Docket of Court of Common Pleas, No. CP-22-CR-0000937-2002.)

### C.    Love's Appeals and Post-Conviction Proceedings

Love appealed, and on May 8, 2007, the Superior Court of Pennsylvania affirmed the judgment of sentence. (*Id.*, Ex. B at 4, Docket of Superior Court of Pennsylvania, No. 198-MDA 2006.)  On December 17, 2007, the Pennsylvania Supreme Court denied Love's petition for allowance of appeal. (*Id.*)  Love elected not to file a petition for a writ of certiorari to the United States Supreme Court, thereby causing his judgment of sentence to become final 90 days after the Pennsylvania Supreme Court's decision, or on March 16, 2008.

On February 24, 2009, Love filed a petition for relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9451 et seq. (Doc. 10, Ex. A, at 18.)  That petition was denied, and on January 10, 2012, the Superior Court affirmed the denial of the PCRA petition. (Doc. 10, Ex. C, Docket of Superior Court of Pennsylvania, No. 339 MDA 2011.)  On August 9, 2012, the Pennsylvania Supreme Court denied Love's petition for allowance of appeal. (*Id.*)  Love filed a petition for a writ of certiorari to the United States Supreme Court, which was denied on November 26, 2012. (Doc. 10, Ex. C, at 4.) Love filed the instant petition for habeas corpus relief on February 20, 2013.  The Commonwealth contends that the petition is untimely.  Love has attempted to argue that, although the petition was unquestionably filed more than one year after Love's conviction became final, the Court should nevertheless find that principles of equitable tolling apply on the grounds that new evidence shows that he is actually innocent of Fennell's murder.

## III.   DISCUSSION

Under AEDPA, a state prisoner typically has one year to file a federal petition for habeas corpus, beginning from the date on which the state-court judgment became final by conclusion of direct appellate review, or the expiration of time for seeking such review.  28 U.S.C. § 2244(d)(1)(A).  In this case it is undisputed that Love's state-court judgment became final after 90 days had expired

to file a petition for a writ of certiorari with the United States Supreme Court concerning Love's direct appeal, which was March 16, 2008. Accordingly, absent any tolling period, Love's petition for federal habeas relief was required to be filed no later than March 16, 2009.

The one-year AEDPA statute of limitations is subject to two tolling exceptions. First, the deadline for filing a petition for habeas corpus in federal court is tolled during the time that a properly filed application for post-conviction review is pending in state court. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."); *Lawrence v. Florida*, 549 U.S. 327, 331 (2007); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

At the same time, there are important limits to the statutory tolling period, and the United States Supreme Court has held that a State application for post-conviction review is not considered to be "pending," and, therefore, does not toll AEDPA's statute of limitations, during the time when the state courts have entered a final judgment in the case, but a petition for filing for certiorari with the Supreme Court has been filed. *Lawrence v. Florida*, 549 U.S. 327, 329 (2007). In other words, once the state's highest court has denied relief in a post-conviction

proceeding, statutory tolling for federal habeas purposes ceases, since the case is no longer pending in state court. *Id.*

Love did seek state collateral review of his conviction under the PCRA, and the pendency of these PCRA proceedings did toll the limitations period. Thus, the one-year statute of limitations prescribed by 28 U.S.C. § 2244(d)(1)(A) was tolled from February 24, 2009 – the date on which Love filed his PCRA petition – until August 9, 2012 – the date on which the Pennsylvania Supreme Court denied his petition for allowance of appeal of the adverse PCRA decision by the Superior Court. Reviewing the undisputed state court records in this case, 345 days of non-tolled time had elapsed before Love filed his PCRA petition, and an additional 195 days of non-tolled time had elapsed between the date that his petition for allowance of appeal with the Pennsylvania Supreme Court was denied and the date on which he initiated these proceedings. Taken together, 540 days of non-tolled time had, therefore, passed before Love filed his petition in this action, which is well past the one-year statutory bar, and Love's petition is not subject to statutory tolling.

In addition to statutory tolling, the deadline for filing a federal petition for habeas relief may be subject to equitable tolling in certain narrow, limited circumstances. *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1931 (2013). The Supreme Court has made clear the especially limited availability of equitable tolling principles, holding that a "petitioner is entitled to equitable tolling only if he

shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quotation marks omitted); *see also Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) (noting that a petitioner must have demonstrated "reasonable diligence in investigating and bringing the claims" because "[m]ere excusable neglect is not sufficient" to invoke principles of equitable tolling).

The Third Circuit has found that exceptional or extraordinary circumstances may exist to allow equitable tolling where (1) the state has actively misled the petitioner, (2) the petitioner has in some extraordinary way been prevented from asserting his rights, or (3) the petitioner has timely asserted his rights, but in the wrong forum. *Urcinoli v. Cathel*, 546 F.3d 269, 272 (3d Cir. 2008). The Third Circuit has also emphasized that equitable tolling should be applied sparingly. *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005).

Love's petition makes no compelling showing that despite his diligence he was somehow prevented in an extraordinary way from filing a timely petition for relief, and indeed he does not appear to be asserting this as a reason for the Court to find his petition timely. Instead, Love has endeavored to fit this case into an even narrower exception: he argues that his petition should be considered on its merits because he is actually innocent of Iris Fennell's murder.

"Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or expiration of the statute of limitations." *McQuiggin*, 133 S. Ct. at 1928.  However, this exception is also quite narrow.  *Id.* ("We caution, however, that tenable actual-innocence gateway pleas are rare[.]").  In *McQuiggin* the Supreme Court relied on its prior decision in *Schlup v. Delo*, 513 U.S. 298 (1995), where the Court held that "a petitioner does not meet the threshold requirement [of showing actual innocence] unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329; *see also McQuiggin*, 133 S. Ct. at 1928; *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and rarely satisfied).  The timing of the petition is also a relevant factor that bears on the reliability of the evidence that a petitioner offers to demonstrate actual innocence.  *McQuiggin*, 133 S. Ct. at 1928.

"To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.  Stated somewhat differently, the petitioner must "present[ ] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *Id.* at

316. But where the new evidence raises "sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that that trial was untainted by constitutional error," then the new evidence meets the "threshold showing of innocence [to] justify a review of the merits of the constitutional claims." *Id.* at 317.[3]

In analyzing a petitioner's actual-innocence claim based on new evidence, "the habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House*, 547 U.S. at 537-38. Accordingly, "[t]he court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.* At the same time, "it bears repeating that the *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *Id.* at 538. A court is not compelled to hold an evidentiary hearing where, after "assess[ing] the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial," the court finds that no reasonable juror would have acquitted the petitioner in the light of the new evidence presented. *Schlup*, 513 U.S. at 331-32; *Houck*, 625 F.3d at 95.

---

[3]   Actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513 U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

In a case out of the Eastern District of Pennsylvania that involved a similar analysis to that required in this case, Judge Slomsky summarized the court's evaluation of the sufficiency of a petitioner's showing under *Schlup* as follows:

> In order to determine whether a habeas petitioner's claim of actual innocence may act as a procedural gateway under *Schlup*, a federal court must consider the following: "[1] whether [the petitioner] has presented 'new reliable evidence . . . [that was] not presented at trial,' and, if so, [2] whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004). For purposes of satisfying the first inquiry, "evidence is only new if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." *Houck v. Stickman*, 625 F.3d 88, 93-94 (3d Cir. 2010) (quoting *Amrine v. Bowersox*, 128 F.3d 1222, 1230 (8th Cir. 1997)). *See also Hubbard*, 378 F.3d at 340 ("A defendant's own late-proffered testimony is not 'new' because it was available at trial. [The defendant] merely chose not to present it to the jury. That choice does not open the gateway."). Once the court determines that a habeas petitioner has presented new reliable evidence, the court must then "assess the likely impact of [that] evidence on reasonable jurors." *House*, 547 U.S. at 538.

*Pirela v. District Attorney of Phila.*, Civ. A. No. 00-5331, 2014 U.S. Dist. LEXIS 67947, *18-19, 2014 WL 2011536, *6 (E.D. Pa. May 16, 2014). Thus, a court must first determine that a petitioner has actually presented new evidence that meets this standard before the court considers its likely impact on a jury.

In this case, despite his suggestions otherwise, Love has not presented newly discovered evidence that could meet the rigorous standard of *Schlup* and the Supreme Court and Third Circuit's jurisprudence governing gateway claims of actual innocence.  Instead, Love has merely repackaged the same arguments that he made to the Pennsylvania Superior Court and labeled them as if they amount to newly discovered evidence that should cause the Court to conclude that had it been presented at trial, would not have permitted any reasonable juror to vote to convict him.  *Compare* Doc. 11 (Love's actual innocence claim) with Doc. 25, Ex. G (Love's Superior Court brief).  This falls well short of what is required to get past the gateway, and to excuse the application of the statute of limitations to Love's untimely petition.

For example, Love argues that the trial court erred by permitting the introduction of certain testimony that Cruz gave during a preliminary hearing because he was limited in his ability to cross-examine her effectively.  As an initial matter, this simply is not new evidence, or even evidence of actual innocence.  Furthermore, it is an issue that was specifically and thoroughly addressed by the Pennsylvania Superior Court on direct appeal following Love's conviction.  (Doc. 25-17,  Memorandum Opinion, at 10-13, *Commonwealth v. Love*, 929 A.2d 242 (Pa. Super. Ct. 2007) (unpublished).)   In its opinion, the Superior Court specifically considered Cruz's testimonial statements, and in no way can this issue

be considered to be newly discovered by virtue of the fact that it formed one of the central arguments in Love's direct appeal, and was featured in the Superior Court's disposition of that appeal affirming Love's conviction.  Moreover, this issue is one that goes to Cruz's credibility, and even if we were to grant Love's contention that Cruz's testimony was subject to attack, any inconsistency in her testimony does not supply the kind of evidence of actual innocence that Love needs to show to avail himself of the gateway as explained in *McQuiggin* and *Schlup*.  Finally, it appears that Cruz's inconsistent statements were at all times known to Love and his counsel, and available for their consideration and use for cross examination, and thus should not be considered "new evidence" for that reason as well.

Love also reiterates another argument that he made on direct appeal, this time with respect to the trial court's decision to disallow evidence of the alleged similarities between the rape of Vanessa Ames and the murder of Iris Fennell. Love tries to present this as an issue of newly discovered evidence that tends to show his actual innocence, but as with Cruz's testimony this is not a matter that constitutes new evidence.  Indeed, this was also an issue that was presented on direct appeal, and responded to at length in the Superior Court's decision affirming Love's conviction.  In that decision, the Superior Court addressed the trial court's reasoned decision to prohibit introduction of evidence comparing the two crimes because it found that the evidence was not probative of a common scheme, and

would serve to confuse the jury.   In its opinion, the Superior Court stated specifically that "[w]e have examined the evidence of the rape of Vanessa Ames and we agree with the conclusion of both Cronin [the State Police investigator charged with assessing crime scenes] and the trial court that there was no evidence of common scheme or plan between the two crimes." (*Id.* at 15-17.)   Given the availability of this evidence to Love and his counsel, the fact that the trial court specifically considered this evidence before determining that it should not be admitted, and the fact that the Superior Court reviewed that decision explicitly and also considered the evidence offered, there is no basis for this federal court to construe this excluded evidence as "new evidence" that tends to show Love's actual innocence of Fennell's murder.   This evidence is, moreover, probative only of an argument regarding *modus operandi* or common scheme, and does not offer compelling evidence that Love as actually innocent of the crime.

Because Love has not met his substantial burden of coming forward with new evidence that satisfies the standards defined in *Schlup* for making a gateway claim of actual innocence to Fennell's murder, the Court should find that Love's claims for habeas relief are untimely and not subject to equitable tolling, and, therefore, should be dismissed.

## IV.    RECOMMENDATION

For the foregoing reasons, it is RECOMMENDED that Love's petition for a writ of habeas corpus be dismissed as untimely, and that a certificate of appealability should not issue.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: September 20, 2016

18