IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


FILED
HARRISBURG, PA
DEC 3 0 2016

<u>TYSHAUNT LOVE</u> - PLAINTIFF

<u>V.</u>

<u>MARIROSA LAMAS, et al.</u> - RESPONDENTS

<u>DOCKET NUMBER: 1:13-cv-456</u>

(JUDGE RAMBO & MAGISTRATE JUDGE CARLSON)

<u>OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Now comes Tyshaunt Love, "Plaintiff", to this Honorable Court objecting to Magistrate Judge Carlson's Report and Recommendation. Plaintiff attests to the following:

1. In the introduction of the Magistrate Judge's Report and Recommendation, He characterized Plaintiff's course of legal action as "sporadic[]" and "erratic", <u>ID</u> at 1, and Plaintiff objects to those characterizations because, even though he is legally blind and without representation, he has always, **consistently**, fought to prove his innocence through litigation in the various state and federal courts, meaning that, the Magistrate Judge's characterizations are inaccurate.

2. And the Magistrate Judge makes another faulty characterization by saying:

> "recognizing this potentially dispositive challenge to his belated petition, [Plaintiff] has characterized his petition as making a claim of actual innocence to Fennell's murder". ID at 2.

From the very first statement he gave to Police, throughout all the pre-trial, trial and post trial proceedings, and even in this current litigation, Plaintiff has adamantly maintained his innocence, so likewise, Plaintiff objects to this inaccurate finding as well.

3. Plaintiff objects to the Magistrate Judge's statement that he "attempted to make" a showing of actual innocence, ID, because, the timeline of the totality of the evidence refutes the false narrative put forth by Respondents, proving that Plaintiff is actually innocent, and thus, Plaintiff HAS put forth a "tenable-actual innocence claim", Mcquiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013), so Plaintiff objects to the Magistrate Judge's findings in this regard as well.

4. Because this petition falls under the Mcquiggin exception, as Plaintiff HAS proven his innocence, this petition is not barred by the AEDPA's one-year statute of limitations and Plaintiff objects to the Magistrate Judge's findings to the contrary. see Magistrate Judge's Report and Recommendation, Pages 2-3.

5. Plaintiff objects to the Magistrate Judge's adoption of Respondents false narrative that "Cruz and Love went to Fennell's house [, and] [a]t the home Fennell and Love proceeded to get into a heated argument in the kitchen, where Fennell was cooking food", ID at 4, as those alleged events have been thoroughly refuted in Plaintiff's Reply to "Respondent's Brief in Support of Response to Petition for Writ of Habeas Corpus"[1].

---

1. "The record reveals the following timeline:
On 12-19-96, between 5pm and 6pm, Plaintiff left Iris sleeping at their McCleaster Street apartment and went to the bar Midnight Special on 14th and Market Streets (see Reply to "Respondent's Brief in Support of Response to Petition for Writ of Habeas Corpus", Appendix B, Page 2). He called home a little after 8pm and got no answer so he wrote it off as Iris still being sleep. ID. Iris shows up at Fav's Bar at approximately 11:00pm, Plaintiff asked her where she was and Iris said that she just woke up. ID. After a brief conversation, Iris left Plaintiff and went over to her girlfriends, Vetta, Wendy, and Towanna, walked out of the bar. ID. Thinking that Iris was outside gossiping with her girlfriends, Plaintiff went outside to talk to her but she was nowhere to be found. ID. Plaintiff asked a few people that was standing in front of the bar if they had seen Iris, he still did not find her. ID. After an hour or more of searching for her Plaintiff called home and Iris did not answer. ID at 3. After searching for Iris with no success, he asked the pizza delivery guy Calvin to drive him home to see if she was there, he went in and walked through the whole house, no Iris, so Calvin took him back to 14th and Market streets. ID. A little after 1:00am, Plaintiff used the phone in front of the Kentucky Fried Chicken (KFC) to call home once again, he got no answer still. ID at 4. Plaintiff got a second ride home to see if Iris was there from a guy named "Horse", and when he went in, Iris was not there and Plaintiff found the house in the same condition he left it in the first time he was there. ID. Tired of looking for Iris, and thinking that she was with another man, Plaintiff called Tootie (Guillermina Cruz), picked her up, and spent the night with her at Pop-Pop's house. ID at 4-5.

Ms. Johanna Johnson Iftikhar-Khan called and talked to Iris at home at approximately 1:00am for 45 minutes, hung up for about 10 minutes, and then Ms. Khan called back and they continued their conversation (N.T.- 9-12/13-2005, Trial - Volume 1, Pages 169-173). The call was interrupted by someone tapping on Iris' window around 2:30am. ID at 174. After letting the person in, and telling Ms. Khan that **the person was not a love interest**, Iris stayed on the phone for a few more minutes before hanging up. ID at 175.
Ms. Khan testified that Iris put the chicken in the oven shortly after Ms. Khan's call (around 1:00am). ID at 183.

Ms. Stacy Harris, whose house is directly behind Iris' house, reported hearing a shot and someone screaming around 2:00am. (see Reply to "Respondent's Brief in Support of Response to Petition for Writ of Habeas Corpus", Appendix C, Page 28).

Suffice it to note that the Coroner fixed the time of death as being between 2-11am. (N.T.- 4-27-10, PCRA Hearing, Page 95).

Plaintiff and Tootie (Guillermina Cruz) parted ways at around 10:00am on 12-20-96, Tootie going in the direction of her Grandmother's house, and Plaintiff headed to 14th and Market Streets. ID at Appendix G, Page 3.

Iris' girlfriend, Wendy Dorthea Harris, said that on 12-20-96 at about 11:00am, she drove to Iris' house, knocked on the door but no one answered and she **smelt something burning**. ID at Appendix D, Page 2. Wendy also said that when she left Iris' house, she went to visit a friend in the apartments on 13th and Market Streets, she looked out the window and saw Plaintiff standing in front of the Five and Dime. "This was just a few minutes from the time it takes to drive to Iris' house to Market street". ID at 3.
Police also noted that Iris' other two girlfriends Chavetta Maynard and Towanna Poteat both saw Plaintiff, <u>alone</u>, in the area of 14th and Market streets on 12-20-96. ID at Appendix E, Page 15). Likewise, Dorthea Campbell, Manager of the KFC at 14th and Market streets, reported that she saw Plaintiff in KFC on the morning in question. N.T.- 4-27-10, PCRA Hearing, Page 15.

Plaintiff called home 2 times that morning and when he got no answer again, he decided to go home. ID at 6. Plaintiff caught a ride and got dropped off near his house, walked straight up the alley to the front door, where he smelt something burning. ID. He knocked on the door but Iris did not answer so Plaintiff could not get in, because the top lock was locked. ID. So Plaintiff ran around back and banged on the back door, which swung wide open on the second bang. ID. Upon entry of the smokey house, Plaintiff turned off the burner, pushed the button to turn off the stove, ran upstairs yelling for Iris, and found her in a disheveled room unresponsive. ID. He put his ear to her chest but heard nothing, so he ran downstairs but before he could get outside, Mr. Zackery Belcher appeared. Reply to "Respondent's Brief in Support of Response to Petition for Writ of Habeas Corpus", Appendix F, Pages 18-19. Plaintiff told him to call the Police something is wrong with Iris. ID. Ms. Socorro Roman rushed over and attempted C.P.R., but once she felt no pulse, she covered Iris' body and awaited Police. ID.

**Plaintiff was on the scene when Police and EMS arrived, was taken in for questioning from the scene, and cooperated fully with Police.**

Out of Ms. Guillermina Cruz (Tootie), Mr. Rasheed La'Quan Williams (Kazar) and the Plaintiff, Police reports, statements, and notes of testimony all prove only one of them is telling the truth about this crime, [and that is the Plaintiff].

In her very first statement to Police, Ms. Cruz told the absolute truth, that her and Plaintiff had parted ways around

4

10:00am on 12-20-96, she went home and Plaintiff went back to 14th and Market streets, ID at Appendix G, Page 3, but Detectives felt that she knew more than she reported and decided to re-interview her. ID at Appendix H, Page 82. The next day, Ms. Cruz told Police the same thing she told them the day before, but was coerced to say something else. ID. After being forced to lie, she wanted nothing else to do with the case and did not return to the Police station for questioning. ID.
Police located Ms. Cruz and arrested her on 12-28-96 for hindering a prosecution, ID at Appendix I, and [she was] made to sign a statement. see Plaintiff's "Memorandum of Law", Appendix M, Page 32.

In her statement to Police on 3-24-01, Ms. Cruz says that she saw Plaintiff shoot Iris (see Reply to "Respondent's Brief in Support of Response to Petition for Habeas Corpus", Appendix J, Page 2), and that there was blood on his shirt, ID at 4, and that Plaintiff saw her **later that day** and told her what to say, ID at 5, Impossible!!! The record proves that "there was no gunshot residue found on [Plaintiff] on 12-20-96 the date of the incident". see N.T.- 4-27-10 - PCRA Hearing, Page 56. There was no blood evidence on Plaintiff's clothes, ID at 58. And Plaintiff had been detained for questioning from the time Police arrived on the scene, was given a 10 minute break from questioning (see Reply to "Respondent's Brief in Support of Response to Petition for Habeas Corpus", Appendix K, Page 12), and consented to a search at the Police station at 8:25pm that night. ID at Appendix L.

Thus, none of her statements after 12-20-96 are true.

And the alternative suspect, Mr. Rasheed La'Quan Williams' [Kazar] statement to Police has been proven untrue by their (Police) own notes.
Kazar (Williams) said that he was at Iris' house on 12-19-96 at "9, 10 o'clock", ID at Appendix M, Page 6, but Iris girlfriends, Wendy Harris and Vetta Maynard, reported seeing Plaintiff and Iris together at 14th and Market at 10:00 that night, ID at Appendix N, Page 19.
Additionally, neither Wendy nor Vetta reported seeing Iris with a lump on her head, a busted nose or a busted lip, which are the injuries Kazar said he witness[ed] Plaintiff inflict upon Iris. ID at 5.

Kazar was arrested the day after Iris murder wearing bloody clothing, ID at Appendix O, Pages 63-65, was in possession of Iris' missing ring, ID at Appendix P, Page 36, and DNA testing of the blood on the boots Kazar was wearing at the time of his arrest revealed that it was Iris' blood. see Plaintiff's "Memorandum of Law", [Appendix N, Pages 194-195].

As his statement to Police has been proven false [by the record], Kazar, a man with motive and an opportunity to commit this crime, whose whereabouts are [officially] un-accounted for during the time of this crime, [although] DNA evidence puts him at the

5

scene of the crime, is more than likely the perpetrator of this crime, and Plaintiff is actually innocent".
Reply to "Respondent's Brief in Support of Response to Petition for Writ of Habeas Corpus", Pages 2-8.

    Further, beside Kazar's statement to Police being refuted, he (Kazar) confessed to committing this crime to two different people, at two separate times and in two different prisons. see Plaintiff's "Memorandum of Law", Appendix I - Statement of Carlos C. Hill, Page 2; Appendix J - Statement of Keith Herndon.

6. Plaintiff also objects to the Magistrate Judge's adoption of the Respondent's false narrative relating to "Cruz [being] a witness to this killing", see Magistrate Judge's report and Recommendation, Page 5, as, with the exception of Cruz's very first statement to Police and her testimony from the Preliminary Hearing of 1-17-97, see "Memorandum of Law", Appendix M, every subsequent statement to Police attempting to paint Plaintiff as the killer of Ms. Iris Fennell has also been thoroughly refuted by the timeline, statements, and Notes of Testimony. see Footnote 1, Supra.
Thus, none of Cruz's subsequent statements are true nor credible.

7. Plaintiff objects to the Magistrate Judge's contention that the evidence presented in his petition does not meet the definition of "newly discovered evidence", see Magistrate Judge's Report and Recommendation, Pages 12-15, as, "'New' evidence in this context does not necessarily mean 'newly discovered' evidence. Two Circuit Courts have concluded that Schlup allows a petitioner to offer 'newly presented' evidence (that is, evidence that was not presented to the trier of fact) and that a petitioner is not limited to offering only 'newly discovered' evidence (that is, evidence discovered post-conviction). See Gomez v. Jaimet, 350 F.3d 673, 679-80 (7th Cir. 2003); Griffin v. Johnson, 350 F.3d 956, 961-63 (9th Cir. 2003)". U.S. v. Davies, 394 F.3d 182, 191 n.8 (3rd Cir. 2004).
Thus, Plaintiff's evidence does meet the definition of "newly presented evidence", ID.

7

8. Plaintiff objects to the Magistrate Judge's contention that "even if [the Court] were to grant [Plaintiff's] contention that Cruz's testimony was subject to attack, any inconsistency in her testimony does not supply the kind of evidence of actual innocence that [Plaintiff] needs to show to avail himself of the gateway as explained in Mcquiggin and Schlup". Magistrate Judge's Report and Recommendation, Page 16.

First, Respondents concede that "[t]he only probative value Cruz's inconsistent statements provide is <u>doubt to Cruz's veracity</u>", see "Respondent's Brief in Support of Response to Petition for Writ of Habeas Corpus", Page 10, and those inconsistent statements form the crux of Respondent's case against Plaintiff. And second, with Cruz's statements being inconsistent with each other, as well as inconsistent with statements, testimony, Police reports and the timeline of events, which were not presented to the jury, and "a Schlup [v. Delo, 513 U.S. 298 (1995)] claim --- requires a federal court to assess how reasonable jurors would react to the **overall, newly supplemented record, which may --- 'include considerations of the credibility of the witnesses presented at trial'**". <u>Lopez v. Miller</u>, 2013 U.S. Dist. Lexis 7262 (2nd Cir. 2013)(quoting <u>House v. Bell</u>, 547 U.S. 518, 538-39 (2006); also see <u>Schlup</u>, supra at 330 (same), Plaintiff not only proves the **impossibility** of him being the perpetrator, but he also provides "the kind of evidence of actual innocence" needed to sustain his burden.

Thus, Plaintiff objects.

9. Petitioner objects to the view that the Magistrate Judge posits with respect to "the Trial Court's decision to disallow evidence of the alleged similarities between the rape of Vanessa Ames and the murder of Iris Fennell", Magistrate Judge's Report and Recommendation, Page 16, for two important reasons, first, Plaintiff sought to allow the jury to hear evidence in the form of threats made on Iris' life made by Kazar (see Plaintiff's "Memorandum of Law", Appendix E - Grand Jury Investigation, Page 4 - "I'm going to kill the bitch"), why those threats were made (see ID - "[Kazar] said that he needed to leave for a while, and then he said that Iris had supposedly told the Police where he was hiding at to get her boyfriend out of jail"), how those threats on Iris' life are inextricably linked to Kazar's rape and attempted murder of Ms. Vanessa Ames (see ID - "Q: Were you talking to him about the rape that he was wanted on? A: I was talking to him about the incident that happened with him slicing a girl's throat"), Kazar's confession to his cellmate/friend (see ID at Appendix I - Statement of Carlos C. Hill, Page 2 - "Q: Did you think that Ka[z]ar had killed Iris prior to this? A: No, I didn't know Kazar was a suspect until after I read the note. I do remember the police took his clothing at booking and he was already in an orange jumpsuit. When we was in the booking cell I asked him about the blood on his clothes and he said he would talk to me later. Later during the conversation we had about Iris he told me that **he hoped that the blood samples from his clothes didn't come back**"), and the fact that Kazar had Iris blood and his boots (see Reply to "Respondent's Brief in Support of

Response to Petition for Writ of Habeas Corpus", Appendix O -Harrisburg Police Notes Excerpt, Pages 63-65 - "Described items were recovered fro a La'quan Williams B/M/25 on 12-21-96 at 1540 hours while in the juvenile offender section 123 Walnut Street Room 314 F, Conference Room A, HBG., PA. Various items to be sent to PSP for analysis. All items to be maintained as evidence. --- Pullover shirt, multi-colored -- **possible blood droplet** --- socks --**possible blood on socks** --- jeans -- **possible blood stained** --leather jacket -- **possible blood stained** --- underwear -- **blood droplets**") and her missing jewelry in his possession upon arrest the day after her murder (see ID at Appendix P - Harrisburg Police Notes Excerpt, Page 36 - "Gold Womans diamond ring --- On Dec. 21, 1996, around 1426 hrs., Suspect La'quan Williams was spotted by Det. Duffin in the area of Market street 1400 blk. Mr. Williams was wanted on outstanding attempted murder and rape charges. After a chase Mr. Williams was arrested and listed ring was found in pocket and the belt was worn by him. The property should be held for processing in this case"), because, upon hearing the totality of this evidence, no jury, acting reasonably, would have convicted Plaintiff of this crime.

And second, The wrongfully exclusion of the afore-mentioned evidence interfered with Plaintiff's 14th Amendment right to present a complete defense, Crane v. Kentucky, 476 U.S. 683, 690 (1986). see Pa.R.Evid. 404(b)(2) - Evidence of other crimes, wrongs or acts may be admitted for purposes such as **proof of motive, opportunity and intent**), prejudicing his defense; 41 C.J.S., Homicide § 216 PP. 56-

9

58, "evidence tending to show the commission by another person of the crime charged may be introduced by the accused **when it is inconsistent with, and raises a reasonable doubt of, his own guilt**"; 40a Am. Jur. 2d, Homicide § 286 PP. 136-138 (1999) "the accused may **introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged**". Plaintiff's defense was prejudiced by the wrongful exclusion of this important evidence.

10. The Magistrate Judge made no mention of Plaintiff's **witness confrontation**, Speedy trial, **ineffective assistance of counsel, and the right to a complete defense** issues and has, thereby, agreed with Plaintiff on these issues.

11. Likewise, The Magistrate Judge made no mention of Plaintiff's issue concerning the necessity of an **evidentiary hearing**, and has, thereby, agreed with Plaintiff on this issue as well.

Further, "the District Court must assess the probative force of newly presented evidence in connection with the evidence of guilt adduced at trial. Obviously, the Court is not required to test the new evidence by a standard appropriate for deciding a motion for summary judgment. --- Instead, the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence". <u>Schlup</u>, 513 U.S. at 331-32. "In assessing the adequacy of [Plaintiff's] showing [of

actual innocence], therefore, the District Court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on 'actual innocence' allows the reviewing [Habeas] tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial". ID at 327-28. Thus, an Evidentiary Hearing is warranted.

12. Thus, because Plaintiff has produced "newly presented evidence", Davies, supra, he has satisfied his substantial burden under Schlup, offering compelling evidence of his actual innocence and constitutional violations that led to his wrongful conviction, therefore, Plaintiff also objects to the Magistrate Judge's recommendation that his petition "be dismissed as untimely". Magistrate Judge's Report and Recommendation, Page 18.

## RELIEF SOUGHT

Plaintiff is seeking relief in the form of an Order granting him an Evidentiary Hearing in lieu proving his innocence, having his conviction reversed and him being freed.

## CONCLUSION

Plaintiff prays that he is granted the relief sought.

RESPECTFULLY SUBMITTED,           DATE: 12-22-16

*Tyshawn Love*

MR. TYSHAUNT LOVE - GK-8460

SCI - ROCKVIEW

BOX A

BELLEFONTE, PA 16823-0820

MR. TYSHAUNT LOVE - GK-8460

SCI - ROCKVIEW

## CERTIFICATE OF SERVICE

I, Tyshaunt Love, "Plaintiff", hereby certify that on 12-22-16, a copy of this Document was served by placing same in the U.S. Mail, sent via First Class Mail to Respondents, addressed as follows:

      JOSEPH P. CARDINALE, JR.
      DEPUTY DISTRICT ATTORNEY - DAUPHIN COUNTY DA'S OFFICE
      DAUPHIN COUNTY COURTHOUSE, 2ND FLOOR
      FRONT & MARKET STREETS
      HARRISBURG, PA 17101

RESPECTFULLY SUBMITTED,                    DATE: 12-22-16

*Tyshaunt Love*

MR. TYSHAUNT LOVE - GK-8460

SCI - ROCKVIEW

BOX A

BELLEFONTE, PA 16823-0820

Tyshaunt Love
GK8460
S.C.I Rockview, Box A
Bellefonte, PA 16823



RECEIVED
HARRISBURG, PA
DEC 30 2016

21.

228

Harr